LYTLE v MALADY (ON REHEARING)

Docket No. 102515. Argued January 6, 1998 (Calendar No. 11). Decided July 1, 1998. Rehearing denied 459 Mich 1203.

Nancy Lytle brought an action in the Muskegon Circuit Court against Michael Malady, her supervisor, and the Howmet Corporation, her employer, after she was discharged from her employment. She alleged breach of a contract providing for termination of employment for just cause only, and age and sex discrimination. Howmet asserted that the discharge was the result of a company-wide reduction in its work force. The court, R. Max Daniels, J., granted summary disposition for the defendants on all counts. The Court of Appeals, D. E. HOLBROOK, JR., P.J., and MURPHY and J. C. KINGSLEY, JJ., reversed (Docket No. 157627). The Supreme Court affirmed in part, finding that the plaintiff reasonably could have had a legitimate expectation of just-cause employment, but reversed the Court of Appeals by finding that the plaintiff failed to present evidence demonstrating the existence of bad faith on behalf of the defendant in conducting its reduction in force. The Supreme Court further affirmed the Court of Appeals in holding that the plaintiff raised a genuine issue of fact with respect to whether the defendant discriminated against her on the basis of her age and gender. 456 Mich 1 (1997). On motion by both parties, the Supreme Court subsequently granted rehearing. 456 Mich 1202 (1997).

In an opinion by Justice WEAVER, joined by Justices BOYLE and TAYLOR, and an opinion by Chief Justice MALLETT, the Supreme Court held:

Even when an employer's decision to reduce its work force is deemed bona fide, a discharged employee claiming age or gender discrimination may survive a motion for summary disposition by presenting sufficient admissible evidence to create a reasonable factual dispute that the employer's proffered reason for discharge was a mere pretext and that age or gender discrimination was a true motivation underlying the plaintiff's discharge. In this case, the plaintiff failed to provide sufficient evidence, direct or circumstantial, to allow a reasonable trier of fact to find that the defendant-employer's reduction in force was a mere pretext for discriminatory animus. The Court further held that the plaintiff cannot assert a legitimate expectation of just-cause employment on the basis of

the employer's policy to terminate only for proper cause, particularly where an employer's policy handbook specifically disclaims any intent to create contractual obligations with employees.

1. Generally, Michigan law presumes that employment relationships are terminable at the will of either party. The presumption can be rebutted, however, so that contractual obligations and limitations are imposed on an employer's right to terminate an employment at will. The presumption is overcome with proof of either a contract provision for a definite term of employment, or one that forbids discharge absent just cause; an express agreement, either written or oral, regarding job security that is clear and unequivocal; or a contractual provision, implied at law, where an employer's policies and procedures instill a legitimate expectation of job security in the employee. Provisions in a handbook will not create enforceable rights, particularly when the handbook expressly states that such provisions are not intended to create an employment contract; nor will oral assurances of job security create such rights, unless they are clear and unequivocal. On the basis of the facts of this case, the plaintiff cannot assert a legitimate expectation of just-cause employment. Moreover, the oral assurances given to the plaintiff were unclear and equivocal. Thus, the plaintiff failed to raise a triable issue with respect to whether she had just-cause employment with the defendant.

2. To establish a prima facie case of discrimination under the Civil Rights Act, a plaintiff must prove by a preponderance of the evidence that the plaintiff was a member of a protected class, suffered an adverse employment action, was qualified for the position, and was discharged under circumstances that give rise to an inference of unlawful discrimination. Once a plaintiff has sufficiently established a prima facie case, a presumption of discrimination arises. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the plaintiff's termination. Once the employer produces such evidence, even if later refuted or disbelieved, the presumption drops away, and the burden of proof shifts back to plaintiff. The plaintiff then must show, by a preponderance of admissible, direct, or circumstantial evidence, that there is a triable issue that the employer's proffered reasons were not true reasons, but were a mere pretext for discrimination. Disproof of an employer's articulated reason for an adverse employment decision defeats summary disposition only if such disproof also raises a triable issue that discriminatory animus was a motivating factor underlying the employer's adverse action. Thus, in the context of summary disposition, a plaintiff must prove discrimination with admissible evidence, either direct or circumstantial, sufficient

to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action.

3. To establish a prima facie case of age discrimination, the plaintiff must prove, by a preponderance of the evidence, that the plaintiff was a member of a protected class, suffered an adverse employment action, was qualified for the position, and was replaced by a younger person. In this case, the plaintiff failed to raise a genuine issue of fact that the employer's proffered reason for discharge, a reduction in force, was a mere pretext for discrimination. To prove that the reduction in force was a mere pretext and that age was a determining factor, the plaintiff had to show that she was treated differently from similarly situated employees. However, her proofs cannot sustain a reasonable inference that economic necessity was really a pretext for discriminatory animus on the part of the employer.

4. To prevail in a claim of gender discrimination over a motion for summary disposition, a plaintiff must raise a triable question of fact that a demotion and eventual discharge were motivated by gender discrimination, not economic or business judgment. In this case, the plaintiff met her burden of establishing a prima facie case with proof that she was a female, was a member of a protected class, and was qualified for her position, but nonetheless was demoted and then discharged under circumstances giving rise to an inference of discrimination. However, she failed to provide evidence sufficient to raise a reasonable, triable question of fact that she was similarly situated to her replacement, the new employer manager of her department, that the reduction in force was a mere pretext for discriminatory animus, and that gender was a determining factor in the employer's decision to demote and then discharge her. Mere disproof of an employer's proffered nondiscriminatory reason is insufficient to survive summary disposition, unless such disproof also raises a triable question of discriminatory motive, not mere falsity. The plaintiff merely provided evidence to reasonably suggest that she and her supervisor had a personality conflict. Therefore, she has not raised a triable issue with regard to whether gender discrimination was a cause of her demotion or eventual discharge.

Justice BRICKLEY, concurring, stated that the plaintiff created a question of fact whether she was a just-cause employee because she had a legitimate expectation of just-cause employment under *Rood v General Dynamics Corp*, 444 Mich 107 (1993). However, summary disposition for the defendant should be upheld because the plaintiff failed to raise a question of material fact that the

defendant had just cause to terminate her as part of its reduction in force.

Reversed.

Chief Justice MALLETT, concurring in part and dissenting in part, further stated that the plaintiff cannot assert a legitimate expectation of just-cause employment because the handbook specifically disclaims any intent to create contractual or binding obligations to employees. Even when an employer demonstrates a bona fide reduction in force, a plaintiff may survive a motion for summary disposition by presenting sufficient evidence that the reduction in work force was a mere pretext and that discriminatory animus was a true motivation behind the discharge. In this case, the plaintiff has not presented sufficient evidence to survive summary disposition of her age discrimination claim; however, a reasonable person could find that her demotion was motivated by gender discrimination.

Justice CAVANAGH, joined by Justice KELLY, dissenting, stated that reasonable minds could conclude that the employee handbook created a legitimate expectation of just-cause employment; thus, a question of fact existed precluding summary disposition in favor of the defendants.

A disclaimer of contractual intent should have no effect on a policy contained in a handbook that gives rise to legitimate expectations of just-cause employment that are outside the operation of normal contract principles. In this case, the employer's policy statement that no employee would be terminated without proper cause or reason is reasonably capable of instilling a legitimate expectation of just-cause employment, and the employer's contractual disclaimer did not contradict that expectation, raising a question of fact regarding whether the plaintiff had a legitimate expectation of just-cause employment. While the defendant asserted that it was conducting a reduction in force, and while it appears the reduction was genuine, factual questions remain regarding whether the plaintiff was terminated as a result of the reduction in force or as a result of unlawful discrimination.

209 Mich App 179; 530 NW2d 135 (1995) reversed.

*Bott & Spencer, P.C.* (by *Timothy J. Bott* and *Karen M. Spencer*), for the plaintiff.

*Varnum, Riddering, Schmidt & Howlett, L.L.P.* (by *Joseph J. Vogan* and *Paul M. Kara*), for the defendants.

Amicus Curiae:

*Miller, Canfield, Paddock & Stone* (by *Charles S. Mishkind*) for Michigan Chamber of Commerce.

ON REHEARING

WEAVER, J. We granted rehearing in this case to clarify the evidentiary standard that plaintiff, alleging age and gender discrimination, must satisfy to survive summary disposition under MCR 2.116(C)(10). We hold that even when an employer's decision to reduce its work force is deemed bona fide, a plaintiff may survive a motion for summary disposition by presenting sufficient admissible evidence to create a reasonable factual dispute that the employer's proffered reason was a mere pretext and that age or gender discrimination was a true motivation behind plaintiff's discharge. In this case, we find that plaintiff failed to provide sufficient evidence, direct or circumstantial, to allow a reasonable trier of fact to find that the Howmet Corporation's (defendant-employer's) reduction in work force (RIF) was a mere pretext for discriminatory animus.

We also granted rehearing to decide whether the employer's policy handbook provisions could reasonably have created a legitimate expectation of just-cause employment. We hold that plaintiff cannot assert a legitimate expectation of just-cause employment based on the employer's policy to terminate only for cause, particularly where the handbook specifically disclaims any intent to create contractual or binding obligations to employees. Moreover, we reject plaintiff's claim that her supervisor's assurances

regarding secure employment were sufficient to allow a reasonable juror to find just-cause employment.

Accordingly, we reverse the decision of the Court of Appeals with regard to defendant-employer,[1] and affirm the trial court's grant of summary disposition for the employer with regard to plaintiff's wrongful discharge claim and her age and gender discrimination claims.

I

A

On January 29, 1973, plaintiff Lytle was hired by the employer as a general clerk in the human resources department at its Whitehall site. Plaintiff's first immediate supervisor was John Ozar. While plaintiff worked with Ozar, she received several favorable performance evaluations and two promotions, one in 1976 and another in 1979, when she was promoted to manager of the entire Whitehall human resources department.

About this time, Ozar hired Walter Boczkaja as plaintiff's subordinate trainee, a position he held for ten years until 1989, when he assumed plaintiff's position as department manager. Boczkaja received a series of departmental promotions during his first two years of employment while working under plaintiff's direction.

During 1984-85, Ozar retired and was replaced by William Roof, who then decided to decentralize the

---

[1] Because the dismissal of the tortious interference claim against Malady is not before the Court, we are reversing the decision of the Court of Appeals only with respect to its rulings against defendant-employer, Howmet Corporation.

department, thereby allowing the Whitehall division to have its own human resources representative. Roof also hired defendant Malady as head of the Whitehall Machined Products Division and, therefore, as plaintiff's new supervisor.

Plaintiff and her new supervisor, Malady, developed a personality conflict. Plaintiff claimed the conflict stemmed from a June 1987 incident when she refused to wear a dress to a company "open house." Plaintiff alleged that Malady told her all the "girls" should wear dresses to this company picnic event. Shortly thereafter, Malady gave her an unfavorable job evaluation, her first in her time with the company.[2] Plaintiff claimed other similar incidents followed.[3] Plaintiff received her second critical performance evaluation in September 1987. Two years later, in January 1989, Malady recommended, and Roof approved, a change in plaintiff's job title.[4] Although her salary and job duties remained the same, plaintiff claimed this change constituted a demotion. Plaintiff retained this

---

[2] This was somewhat unusual because evaluations were typically submitted in December of each year so as to evaluate an employee's performance during the prior twelve months.

[3] The second specific incident described by plaintiff stemmed from her activity as administrator of employer's affirmative action equal employment opportunity (EEO) file. In September 1987, she claims she complained to her supervisor to no avail, and then told Roof, that her supervisor was undermining her by hiring an individual for a job opening designated in the EEO file. Roof issued a memorandum indicating that Roof objected to supervisor Malady's action.

[4] Plaintiff's job title was changed from "human resources representative" to "human resources specialist." Malady suggested that this title change was necessary to reduce the number of reports made to him and to "centralize the total employment function under one person . . . ." However, he also indicated that he had "some performance concerns . . . with [plaintiff's] supervisory abilit[ies]" as reflected in his evaluation. Plaintiff assumed this newly entitled position as of January 1989.

newly entitled position until her November 1, 1991, discharge.

The day plaintiff was demoted in 1989, Boczkaja, her subordinate and one-time trainee, assumed her position as "employer manager" of the department.

In November 1991, when plaintiff was forty-four years of age, she was notified that her position was being eliminated pursuant to the employer's reduction in force. To rebut the presumption of discrimination, the employer showed that the company-wide RIF was prompted by a projected significant decline in company sales.[5] The employer provided statistical data to establish that between 1987 and 1992 the number of employees in Whitehall was reduced by almost fifty percent (from 4,100 to 2,450) and that in 1991 the RIF resulted in termination of ninety-one employees, only fifty-four of whom were under the age of forty and sixty-eight of whom were male.

Six months before plaintiff's discharge, the employer hired Andrea Achterhoff as human resources manager of a different department. About that same time, the employer also effected a transfer of Jeff Billingsley to the training section of plaintiff's department. Billingsley was specifically transferred to

---

[5] The employer, a manufacturer of airplane parts, presented evidence that it projected a severe decline in sales due to military spending reductions and a commercial airline industry downturn. This reduction led the employer to institute an RIF from 1988 to 1991.

According to the employer, in 1991 Roof was directed to decrease his departmental budget by fifteen percent, roughly $439,000. Toward this end, Roof eliminated four positions in his department, including plaintiff's. According to Roof, these four positions were selected on the basis of job functions—theirs being less necessary to his department. The other eliminated positions included two plant medical staff and the "employee assistance program" assistant. From 1987 to June 1992, the Whitehall work force decreased from 4,100 to 2,450 employees.

facilitate training of a new manufacturing concept, a job he had been performing for the previous two years in another department.

Boczkaja completed plaintiff's termination evaluation on November 22, 1991. Her supervisor, Malady, accepted the evaluation, which indicated that plaintiff should be rehired should a nonsupervisory, administrative position become available. Meanwhile, upon discharge, plaintiff's duties were distributed among other departmental employees.

Roughly two months later, on January 7, 1992, plaintiff filed a complaint against the employer and her supervisor, alleging wrongful discharge, or breach of a "just-cause" employment contract, and age and gender discrimination in violation of Michigan's Civil Rights Act, MCL 37.2202; MSA 3.548(202).

B

Plaintiff's breach of contract claim was premised on two theories. First, plaintiff asserted that she legitimately expected that her employment would not be terminated except for just cause, given certain employee handbook provisions and verbal assertions. Second, plaintiff further claimed that in 1979 she told Ozar that she was considering resigning, in response to which he assured plaintiff that her employment was not only secure, but subject to further advancement.

With respect to the legitimate-expectation claim, at the time she was hired in 1973, plaintiff received an employee handbook that set forth all the employer's employment policies and procedures. Specifically the handbook provided:

*The contents of this booklet are not intended to establish, and should not be interpreted to constitute any contract between the Misco Whitehall Division, Product Support Operations, Reactive Metal Operations or the Technical Center of Howmet Turbine Components Corporation and any employee, or group of employees.*

For over twenty years we have concentrated on the production of the finest investment castings, with the development of policies and principles which aim at the attainment of pride in every day's work for every employee, plus the satisfaction of finding opportunities for individual growth and security. [Emphasis added.]

Regarding employment status, the handbook stated that a probationary period existed during which both employer and employee could evaluate whether to continue the employment relationship. That same section also included the following statement:

No employee will be terminated without proper cause or reason and not until management has made a careful review of the facts.

In 1981, the employer added the following disclaimer to the handbook: "[T]he Company reserves the right to terminate employees without assigning cause; therefore, the employee serves at the will of the employer." Generally, only new employees received direct notification of this disclaimer, which was affixed to handbooks distributed to new employees. Plaintiff's job duties, however, included supervising employees who actually placed such notices in the new handbooks. When she noticed the policy, plaintiff claims she asked a co-worker if it applied to her and was told it only applied to new employees.

C

Pursuant to MCR 2.116(C)(10), both defendants moved for summary disposition, which the circuit court granted with respect to all counts.

The Court of Appeals partially reversed and remanded. 209 Mich App 179; 530 NW2d 135 (1995).[6] This Court granted leave to appeal,[7] and issued a divided opinion in which the majority affirmed the decision of the Court of Appeals, finding that plaintiff reasonably could have had a legitimate expectation of just-cause employment. The majority reversed the Court of Appeals, however, by finding that plaintiff failed to present evidence demonstrating the existence of bad faith on behalf of defendant-employer in employer's decision to conduct an RIF. The majority further affirmed the Court of Appeals holding that plaintiff raised a genuine issue of fact with respect to whether the defendant-employer discriminated against her on the basis of her age and gender. 456 Mich 1; 566 NW2d 582 (1997).

We granted the reconsideration motions filed by both parties to again consider the issues presented in this case. 456 Mich 1202 (1997).

II

Plaintiff claimed she was wrongfully discharged because her employment could only be terminated for just cause. Generally, and under Michigan law by presumption, employment relationships are terminable at the will of either party. *Lynas v Maxwell Farms*, 279

---

[6] The Court of Appeals affirmed the dismissal of the tortious interference claim against Malady. This issue was not, however, raised on appeal for this Court's consideration.

[7] 451 Mich 920 (1996).

Mich 684, 687; 273 NW 315 (1937). However, the presumption of employment at will can be rebutted so that contractual obligations and limitations are imposed on an employer's right to terminate employment. *Toussaint v Blue Cross & Blue Shield of Michigan*, 408 Mich 579; 292 NW2d 880 (1980). See also *Edwards v Whirlpool Corp*, 678 F Supp 1284, 1291 (WD Mich, 1987). The presumption of employment at will is overcome with proof of either a contract provision for a definite term of employment, or one that forbids discharge absent just cause. *Rood v General Dynamics Corp*, 444 Mich 107, 117; 507 NW2d 591 (1993). Courts have recognized the following three ways by which a plaintiff can prove such contractual terms: (1) proof of "a contractual provision for a definite term of employment or a provision forbidding discharge absent just cause";[8] (2) an express agreement, either written or oral, regarding job security that is clear and unequivocal;[9] or (3) a contractual provision, implied at law, where an employer's policies and procedures instill a "legitimate expectation" of job security in the employee.[10] Plaintiff relies on the second and third means of proving "just-cause" employment.

A

We have recognized a two-step inquiry to evaluate legitimate-expectations claims. The first step is to

---

[8] *Rood* at 117, citing *Rowe v Montgomery Ward & Co, Inc*, 437 Mich 627, 636; 473 NW2d 268 (1991).

[9] *Bullock v Automobile Club of Michigan*, 432 Mich 472, 479; 444 NW2d 114 (1989). See also *Rowe* at 640-641.

[10] *Toussaint* at 615. The policies and procedures, upon which a legitimate expectation claim is based, must be reasonably related to employee termination. *Rood* at 139.

decide "what, if anything, the employer has promised," and the second requires a determination of whether that promise is "reasonably capable of instilling a legitimate expectation of just-cause employment . . . ." *Rood* at 138-139.

Not all policy statements will constitute a "promise," which we have recognized as a

> "manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." [*Id.* at 138-139, quoting the Second Restatement of Contracts, § 2(1).][11]

A lack of specificity of policy terms or provisions, or a policy to act in a particular manner as long as the employer so chooses, is grounds to defeat any claim that a recognizable promise in fact has been made. *Rood* at 139. In this case, plaintiff's proof lacks both the specificity and commitment that raises an employer's policy to the level of a promise.

Plaintiff bases her claim of just-cause employment on the employer's policy that

---

[11] The distinction between a mere policy and a promise is evident in this Court's recognition that

> [t]he very definition of "policy" negates a legitimate expectation of permanence. "Policy" is defined as "a definite course or method of action selected (as by a government, institution, group, or individual) from among alternatives and in the light of given conditions to guide and usu[ally] determine present and future decisions; . . . a projected program consisting of desired objectives and the means to achieve them . . . ." *Webster's Third New International Dictionary, Unabridged Edition* (1964). In other words, a "policy" is commonly understood to be a flexible framework for operational guidance, not a perpetually binding contractual obligation. [*In re Certified Question (Bankey v Storer Broadcasting Co)*, 432 Mich 438, 455-456; 443 NW2d 112 (1989).]

[n]o employee will be terminated without proper cause or
reason and not until management has made a careful
review of the facts.

We find this policy is insufficient to overcome the
strong presumption of employment at will, particu-
larly where the original handbook also provided that
"[t]he contents of this booklet are not intended to
establish . . . any contract between . . . [the
employer] and any employee, or group of employees."
This contractual disclaimer clearly communicated to
employees that the employer did not intend to be
bound by the policies stated in the handbook. At the
very least, we find the disclaimer renders the "proper
cause" statement too vague and indefinite to consti-
tute a promise. For this reason, we hold that the
"proper cause" provision on which plaintiff relied did
not constitute a promise that could form the basis of
a legitimate-expectation claim.[12]

Even assuming that plaintiff survived the threshold
inquiry and that reasonable minds could find that the
employer made a promise to discharge only for cause,
we find plaintiff's claim cannot survive the second
step of a legitimate-expectation analysis. Plaintiff has
not shown that the employer's policy is reasonably
capable of instilling a legitimate expectation of just-
cause employment. The handbook in question con-
tained a specific disclaimer of contractual intent and
did not contain detailed discharge procedures or
other specific policies to reasonably support plain-

---

[12] Because we find that plaintiff failed to raise a triable issue regarding
whether her employment could only be terminated for cause, we do not
reach the subsequent question whether the employer had just cause to
terminate plaintiff pursuant to a reduction in force.

tiff's reliance on the single and controverted policy to discharge for proper cause. Moreover, plaintiff did not receive the handbook in the course of employment negotiations or discussions involving oral assurances of job security, and plaintiff does not allege other evidence sufficient to support the conclusion that plaintiff legitimately expected that the policy rose to the level of a promise of just-cause employment.[13]

Our holding today is consonant with this Court's decision in *Toussaint, supra,* and its progeny. While *Toussaint* held that "an employer's express agreement to terminate only for cause, or statements of company policy and procedure to that effect, can give rise to rights enforceable in contract," this Court

---

[13] Indeed, in *Toussaint, supra,* this Court held that a jury could find that plaintiff Toussaint had a legitimate expectation of just-cause employment based on the policy statements set forth in that handbook. However, this Court's determination in *Toussaint* was not based on a single, controverted policy statement. Rather, the case included other evidence sufficient to support the conclusion that the employer had promised just-cause employment and that the employee's reliance on that promise was reasonable and legitimate. The employer made oral promises of just-cause employment during hiring negotiations with both plaintiffs and, in the case of plaintiff Toussaint, handed him the policy manual and referred him to the specific discharge policies contained therein. Plaintiff Toussaint based his claim on several policies that listed the specific disciplinary procedures in detail, indicated such procedures applied to all employees who completed the probationary period, and further stated that it was the "policy" of the company to release employees "for just cause only." *Id.* at 598. Further, the Blue Cross handbook at issue in *Toussaint* contained no disclaimers. Later, in *Rood, supra,* this Court held that plaintiff Rood sufficiently alleged a legitimate-expectation claim given the sum and specificity of various provisions regarding discharge. *Id.* at 139-140, 142-143. We find that these cases support our holding because, in this case, plaintiff pointed to no specific or detailed discharge procedures, plaintiff did not allege other evidence sufficient to support the existence of a promise or legitimate expectation, and the single policy she relied on was undermined by a clearly worded contractual disclaimer. In these circumstances, a reasonable employee could not expect that the employer created a legally enforceable obligation.

simultaneously recognized limits to this rule. *Toussaint, supra* at 610. The Court recognized one limit by noting that the employer in *Toussaint*

> could have established a company policy of requiring prospective employees to acknowledge that they served at the will or the pleasure of the company and, thus, have avoided the misunderstandings that generated this litigation. [*Id.* at 612.]

We find that the instant employer took similar strides by including the specific contractual disclaimer.

Furthermore, in 1981, the employer added a specific disclaimer of just-cause employment by expressly providing that it "reserve[d] the right to terminate employees without assigning cause; therefore, the employee serves at the will of the employer." To effectively add this provision and bind employees to this specific just-cause disclaimer (1981 disclaimer), the employer needed to give reasonable notice to all affected employees. *In re Certified Question (Bankey v Storer Broadcasting Co)*, 432 Mich 438, 455-457; 443 NW2d 112 (1989).[14] In an effort to provide such rea-

---

[14] In accordance with the principles set forth in *Toussaint*, this Court determined:

> Fairness suggests that a discharge-for-cause policy announced with flourishes and fanfare at noonday should not be revoked by a pennywhistle trill at midnight. [*In re Certified Question* at 457.]

The "principles," which were identified in *Toussaint* and were explained in *In re Certified Question*, promote "stability in employment relations" by

> holding employers accountable for personnel policies that "are established and official at any given time," and by requiring that such policies be "applied consistently and uniformly to each employee." [*In re Certified Question* at 455.]

sonable notice, the employer placed the new policy in the handbooks it provided new employees. Plaintiff helped affix the 1981 disclaimer in handbooks for newly hired employees. We find, therefore, that we do not have to determine whether such notice was reasonably calculated to notify plaintiff, because the evidence indicates she received *actual* notice.[15]

Finally, we find our holding today to be supported by our recent decision in *Heurtebise v Reliable Business Computers, Inc*, 452 Mich 405; 550 NW2d 243 (1996), in which we held that provisions in a handbook will not create enforceable rights when the handbook expressly states that such provisions are not intended to create an employment contract. In *Heurtebise*, we held that an arbitration clause in an

---

[15] Plaintiff claims that she disregarded this notice because she was told that the disclaimer only applied to newly hired employees and that she reasonably relied on the written manual provided her when she was originally hired. Plaintiff's argument was considered and rejected by this Court in *In re Certified Question, supra*, where we determined that

[w]ere we to answer the certified question by holding that once an employer adopted a policy of discharge for cause, such a policy could never be changed short of successful renegotiation with each employee who worked while the policy was in effect, the uniformity stressed in *Toussaint, supra*, pp 613, 619, 624, would be sacrificed. If an employer had amended its handbook from time to time, as often is the case, the employer could find itself obligated in a variety of different ways to any number of different employees, depending on the modifications which had been adopted and the extent of the work force turnover. [*Id.* at 456.]

Because the employer changed its policy by adding a specific disclaimer of just-cause employment, and because plaintiff had actual notice of this change, she cannot insist that she, nevertheless, still has a legitimate expectation of just-cause employment because her employment terms are different than those applicable to other employees. The legitimate expectation cause of action seeks to enforce policies that rise to the level of "promises" and are "consistently and uniformly" applicable. *Id.* at 455.

employee handbook was unenforceable where the handbook also included the following:

> "It is important to recognize and clarify that the Policies specified herein do not create any employment or personal contract, express or implied . . . . NOTWITHSTANDING ANY OF THE SPECIFIC POLICIES HEREIN, EACH EMPLOYEE HAS THE ABSOLUTE RIGHT TO TERMINATE HIS/HER OWN EMPLOYMENT AT ANY TIME, WITHOUT NOTICE, AND FOR ANY REASON WHATSOEVER, AND THE COMPANY HAS THE SAME RIGHT.
>
> "From time to time, the COMPANY specifically reserves the right, and may make modifications to any or all of the Policies herein, at its sole discretion, and as future conditions may warrant." [Id. at 413.]

This Court found that "[t]his demonstrates that the defendant did not intend to be bound by any provision contained in the handbook." Id. at 414. The contractual disclaimer at issue in this case serves the same purpose and clearly evidences and communicates the employer's intent not to be bound by the handbook provisions.[16] Accordingly, we find Heurtebise further supports our holding that plaintiff cannot assert a legitimate expectation of just-cause employment because the handbook specifically dis-

---

[16] The dissent would have us, essentially, create a new rule that would apply whenever a handbook contained arguably conflicting policies that, if fairly read, conveyed "mixed messages" regarding an employee's employment status. Post at 189, n 2. In so doing, the dissent effectively reduces the proof required to survive summary disposition. We reject the dissent's position proposing such an abridged burden of proof and find that a legitimate-expectation claim does not automatically arise whenever a handbook contains mixed messages. Rather, plaintiff must still provide sufficient evidence to raise a triable question that the policy arguably instilled a legitimate expectation that superseded the express contractual disclaimer. Indeed, reasonable minds cannot differ if plaintiff fails to show her interpretation should prevail.

claims any intent to create contractual obligations with employees.[17]

B

Plaintiff's claim of just-cause employment was also premised upon certain oral assurances, allegedly made by her original supervisor Ozar and the individuals who originally hired her, that her job was secure and she had potential for promotion.[18] In evaluating these assurances, we consider all relevant circumstances, including other written and oral statements and other conduct manifesting intent. *Rowe, supra.* We require such verbal assurances to be clear and unequivocal. *Id.* at 640-641. In this case, we find that

---

[17] The dissent claims *Heurtebise* is distinguishable because it "dealt with whether there was a contractual obligation to arbitrate, despite a contractual disclaimer," and because

[t]his case deals with the legitimate expectations of just-cause employment that arise *outside* the normal operation of contract principles. Therefore, a contractual disclaimer should have no effect on a policy arising outside the operation of those principles. [*Post* at 188-189, n 1.]

First, we find *Heurtebise* is on point with the instant action because it was based on a handbook policy requiring arbitration and the instant plaintiff bases her claim on the following handbook provision: "No employee will be terminated without proper cause or reason and not until management has made a careful review of the facts." Second, an express contractual disclaimer such as that in this handbook is certainly relevant, and in this case dispositive, of the reasonableness of the employee's claim. After all, the law only protects reasonable and legitimate expectations. An express policy that disclaims any contractual intent certainly requires a plaintiff-employee to explain why a case is reasonable and legitimate despite an express disclaimer. While courts should review handbook provisions in their contexts, in most instances express disclaimers of contractual intent will foreclose legitimate-expectation claims, given the difficulty of then proving such reasonable and legitimate expectations.

[18] Plaintiff alleged that Ozar told her the following: "[H]e would really like me to stay. I had a very secure job at Howmet. I had a lot of potential. They would miss me if I left and hoped I would come to the decision to stay."

the assurances given to plaintiff were neither. Indeed, no specific statements with regard to duration of employment or grounds for termination were made. There was no indication of an actual negotiation or an intent to contract for permanent or just-cause employment. We, therefore, find that these statements can only reasonably be interpreted as expressions of "optimistic hope" for a long and satisfying employment relationship. *Id.* at 640.

For these reasons, we find that plaintiff failed to raise a triable issue with respect to whether she had just-cause employment with defendant. We reverse the decision of the Court of Appeals on this issue and find that summary disposition was appropriately granted with regard to plaintiff's legitimate-expectations claim.

III

A

Plaintiff alleges age and gender discrimination in violation of Michigan's Civil Rights Act, MCL 37.2202(1)(a); MSA 3.548(202)(1)(a), which provides in relevant part:

> (1) An employer shall not do any of the following:
> (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

To establish a prima facie case of discrimination, plaintiff must prove by a preponderance of the evidence that (1) she was a member of the protected class; (2) she suffered an adverse employment action,

in this case, demotion and then discharge; (3) she was qualified for the position; but (4) she was discharged under circumstances that give rise to an inference of unlawful discrimination.[19] Once plaintiff has sufficiently established a prima facie case, a presumption of discrimination arises. The burden then shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for plaintiff's termination[20] to overcome and dispose of this presumption. In this case, plaintiff's prima facie case was established in her well-pleaded complaint, to which defendant responded after discovery with a summary disposition motion. The summary motion, therefore, articulated defendant's legitimate, nondiscriminatory reason for plaintiff's discharge.[21] Defendant's response constituted the second stage of proof, in which the burden shifted to defendant. At this stage, defendant

> need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the

---

[19] This four-part proof or test is an adaptation of the United States Supreme Court's *McDonnell Douglas* test to prove a prima facie case of discrimination. *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973). In adopting this test, we have cautioned that it is not to be applied mechanically, but with due deference to the unique facts of the individual case. *Lytle v Malady*, 456 Mich 1, 27; 566 NW2d 582 (1997), citing *Furnco Construction Corp v Waters*, 438 US 567, 577; 98 S Ct 2943; 57 L Ed 2d 957 (1978). See also *Merkel v Scovill, Inc*, 787 F2d 174, 177 (CA 6, 1986).

Furthermore, this three-step framework should not imply that proof must be presented in three distinct stages. The framework is merely a means of analyzing the allocation of proof.

[20] *Texas Dep't of Community Affairs v Burdine*, 450 US 248, 252-253; 101 S Ct 1089; 67 L Ed 2d 207 (1981).

[21] Defendant first raised the RIF as an affirmative defense in its early pleadings and responses.

defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. [*Texas Dep't of Community Affairs v Burdine*, 450 US 248, 254-255; 101 S Ct 1089; 67 L Ed 2d 207 (1981) (citations omitted).]

Once the defendant produces such evidence, even if later refuted or disbelieved, the presumption drops away, and the burden of proof shifts back to plaintiff. At this third stage of proof, in this case in response to the motion for summary disposition, plaintiff had to show, by a preponderance of admissible direct or circumstantial evidence, that there was a triable issue that the employer's proffered reasons were not true reasons, but were a mere pretext for discrimination.

This Court has struggled to define the requisite standard of proof sufficient to survive summary disposition of a discrimination claim under this framework, particularly with respect to the third stage of proof at issue here. In this regard, the United States Supreme Court recently stated:

The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination, and the Court of Appeals was correct when it noted that, upon such rejection, "[n]o additional proof of discrimination is required" . . . . [*St Mary's Honor Center v Hicks*, 509 US 502, 511; 113 S Ct 2742; 125 L Ed 2d 407 (1993).]

In our earlier decision in this matter, and in *Town v
Michigan Bell Telephone Co*, 455 Mich 688; 568 NW2d
64 (1997), a majority of this Court adopted what is
known as the "intermediate position" for determining
the proper summary disposition standard for employ-
ment discrimination claims under Michigan's Civil
Rights Act.[22] We adhere to this intermediate position
today, as have the majority of federal circuit courts of
appeal. Under this position, disproof of an employer's
articulated reason for an adverse employment deci-
sion defeats summary disposition only if such dis-
proof also raises a triable issue that discriminatory
animus was a motivating factor underlying the
employer's adverse action.[23] In other words, plaintiff

---

[22] In *Town, supra,* we adopted the intermediate position and held that
this position required that

> when viewed in the light most favorable to the plaintiff, the evi-
> dence must create a material issue of fact on which reasonable
> minds could conclude that the employer's stated reason is a pretext
> for discrimination for summary judgment to be precluded. Thus,
> plaintiff will not always present a triable issue of fact merely by
> rebutting the employer's stated reason(s); "put differently, that
> there may be a triable question of falsity does not necessarily mean
> that there is a triable question of discrimination." Furthermore, we
> note that in accordance with nine other federal circuits, "evidence
> sufficient to discredit a defendant's proffered nondiscriminatory
> reasons for its actions, taken together with the plaintiff's prima
> facie case, [may be] sufficient to support (but not require) a finding
> of discrimination." "Where . . . either direct or circumstantial evi-
> dence from which a fact-finder could rationally conclude that the
> employer's stated reason is a pretext for discrimination, summary
> judgment normally should be denied." [*Id.* at 698.]

[23] See *Anderson v Liberty Lobby, Inc,* 477 US 242; 106 S Ct 2505; 91 L
Ed 2d 202 (1986). In *Anderson,* the United States Supreme Court clarified
that

> the judge's function is not himself to weigh the evidence and deter-
> mine the truth of the matter but to determine whether there is a
> genuine issue for trial. . . . [T]here is no issue for trial unless there

must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for age or sex discrimination. Therefore, we find that, in the context of summary disposition, a plaintiff must prove discrimination with admissible evidence, either direct or circumstantial, sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff.[24]

In determining whether summary disposition is appropriate, courts must consider this evidence in the light most favorable to the nonmoving party, in this case plaintiff, and must give that party the benefit of any reasonable doubt. *Rizzo v Kretschmer*, 389 Mich 363, 372; 207 NW2d 316 (1973). Courts may not make factual findings or weigh the credibility of the evidence presented,[25] which at the summary disposition stage would be in the form of admissions, affidavits, pleadings, depositions, and other material submitted to the court in support of or opposition to the motion. Moreover, summary disposition is only appropriate where the claim or defense would be insupportable at trial because of an incurable deficiency. *Stevens v McLouth Steel Products Corp*, 433 Mich 365, 370; 446 NW2d 95 (1989). In other words, courts should be lib-

---

is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. [*Id.* at 249-250 (citations omitted).]

[24] *Town, supra* at 696-697.

In making this assessment, of course, we take the evidence in the light most favorable to the nonmoving party, plaintiff in this case.

[25] *Featherly v Teledyne Industries, Inc*, 194 Mich App 352, 357; 486 NW2d 361 (1992).

eral in finding that a genuine issue of material fact does exist. *Rizzo* at 372. Finally, in considering the lower court's grant of summary disposition in the instant case, this Court must conduct a de novo review. *Borman v State Farm Fire & Casualty Co*, 198 Mich App 675, 678; 499 NW2d 419 (1993), aff'd 446 Mich 482; 521 NW2d 266 (1994).

B

To establish a prima facie case of age discrimination, plaintiff must prove, by a preponderance of the evidence, that (1) she was a member of the protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) she was replaced by a younger person. *Town* at 695. In this case, neither party contests that plaintiff established a prima facie case.[26] Moreover, neither party contests that the employer was conducting a bona fide RIF when it terminated plaintiff so as to effectively rebut the presumption of discrimination.[27] Rather, the par-

---

[26] As the Court of Appeals correctly stated:

An age discrimination claim can be based on two theories [to show intentional discrimination]: (1) disparate treatment, which requires a showing of either a pattern of intentional discrimination against protected employees, e.g., employees aged forty to seventy years, or against an individual plaintiff; or (2) disparate impact, which requires a showing that an otherwise facially neutral employment policy has a discriminatory effect on members of a protected class. See *Farmington Ed Ass'n v Farmington School Dist*, 133 Mich App 566; 351 NW2d 242 (1984). [See also *Meagher v Wayne State Univ*, 222 Mich App 700, 708-709; 565 NW2d 401 (1997).] In this case, plaintiff has presented competent evidence only of a disparate treatment claim. [209 Mich App 184-185.]

[27] The employer provided evidence to show that, as a result of the RIF, a total of ninety-one employees were discharged, fifty-four of whom were under the age of forty. Between 1987 and 1992, the number of employees at Whitehall was reduced by almost fifty percent. In grappling with the RIF

ties contest whether the RIF explanation was a mere pretext for discriminatory animus in eliminating plaintiff's position.

As previously indicated, at this third stage of proof, we consider whether plaintiff's evidence, including that evidence introduced at the initial stage in her complaint to prove her prima facie case, was sufficient to raise a triable, genuine, and material issue regarding whether age was a determining factor in the decision to discharge plaintiff. On the basis of the following discussion, we find that plaintiff failed to raise a genuine issue of fact that the employer's proffered reason for discharge, an RIF, was a mere pretext for discrimination.

To prove that the RIF was a mere pretext and that age was a determining factor, plaintiff had to show that she was treated differently from similarly situated employees.[28] In this case, plaintiff's proof was

---

defense, the United States Court of Appeals for the Sixth Circuit explained:

It is important to clarify what constitutes a true work force reduction case. A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform plaintiff's duties. [*Barnes v GenCorp Inc*, 896 F2d 1457, 1465 (CA 6, 1990).]

In this case, plaintiff was not replaced because her job duties were reassigned to other employees to assume in addition to their other work. See *Sahadi v Reynolds Chemical*, 636 F2d 1116 (CA 6, 1980).

[28] Plaintiff bears the burden of showing that the other employees were similarly situated. The employer does not, in the first instance, need to offer proof of dissimilarity. *Sargent v Int'l Brotherhood of Teamsters,*

entirely circumstantial and comparative. Plaintiff attempted to raise a triable issue by showing she was subject to disparate treatment from individuals outside the protected group. Specifically, plaintiff showed that six weeks before her discharge, the employer hired Achterhoff as Operhall Research Center's human resources specialist.[29] Plaintiff also showed that the employer transferred Billingsley from its corporate human resources department to Whitehall's department. Both Achterhoff and Billingsley were younger and had less seniority than plaintiff.

We find these distinctions to be without effect because neither Achterhoff nor Billingsley were similarly situated to plaintiff in terms of job qualifications and functions. Achterhoff had a graduate degree, which plaintiff did not. Moreover, Achterhoff was hired by an entirely distinct and separate division. The employer also showed that Billingsley was transferred specifically to facilitate the training of a new manufacturing concept. He had a similar, corporate position as a training and development manager for a year before this transfer. Plaintiff offered no proof that she possessed such abilities or was similarly qualified to provide training with regard to this new manufacturing concept.

Plaintiff also failed to note that the individual responsible for eliminating her position, Roof, did not take part in the decision to hire Achterhoff, who was hired by a different department, or Billingsley. While he did approve Billingsley's transfer into his depart-

---

*Local Union No 337*, 713 F Supp 999, 1015; 56 Fair Empl Prac Cases (BNA) 1395 (ED Mich, 1989).

[29] The research center is a distinct and separate division of the employer's operation from Whitehall where plaintiff worked.

ment, he did so given his specific need for a training specialist.

Further, the employer submitted evidence showing that the dire economic forecast for the company led to the directive that required Roof to cut his departmental budget by fifteen percent. The hardest hit segment of the work force was the hourly workers, for whom plaintiff was primarily responsible. Roof explained in detail that plaintiff's position, and that of three other employees, was targeted because it was less essential than others. To further defeat the claim of pretext, the employer showed that no one was hired to fill plaintiff's position, but that her job was entirely eliminated and her duties were reassigned to seven other employees, three of whom were within two years of plaintiff's age, and, therefore, within the protected class. This, coupled with the fact that Roof himself is ten years plaintiff's senior, is further evidence that economics, not age, was a motivating factor in the decision to discharge plaintiff.

For these reasons, we find, despite giving the benefit of any reasonable doubt to the nonmoving party, that plaintiff's proofs simply cannot sustain a reasonable inference that economic necessity was really a pretext for discriminatory animus on the part of the employer. Accordingly, we hold that plaintiff failed to present sufficient evidence to raise a triable issue of fact that her position would not have been eliminated but for her age. *EEOC v Clay Printing Co*, 955 F2d 936, 940 (CA 4, 1992). Summary disposition was appropriately granted for defendant with respect to age discrimination.

C

Plaintiff's gender discrimination claim was based on Roof's decision to discharge her. Plaintiff met her burden of establishing a prima facie case[30] with proof that she was a female, a member of a protected class, and qualified for her position, but was nonetheless demoted and then discharged under circumstances giving rise to an inference of discrimination.[31] Plaintiff's proof of differential treatment involved several incidents with her supervisor that she claims culminated in her 1989 demotion, and also Roof's decision to discharge her in 1991. The employer effectively rebutted this inference with proof that it was conducting a bona fide RIF, as previously discussed.

The issue again turns on the third stage of proof, where plaintiff must ultimately raise a triable question of fact that her demotion and eventual discharge were motivated by gender discrimination, not economic or business judgment. Plaintiff must present sufficient evidence to permit a reasonable juror to find that for the same or similar conduct she was treated differently from a similarly situated male employee. *Betty v Brooks & Perkins*, 446 Mich 270, 281; 521 NW2d 518 (1994). In this case, that employee was Walter Boczkaja. We find that plaintiff failed to

---

[30] As we stated in *Town, supra*, to establish a prima facie case, an employee must be shown to have been "(1) a member of a protected class, (2) subject to an adverse employment action, [and] (3) qualified for the position, and that (4) others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct." [*Id.* at 695.]

[31] Michigan courts have recognized two basic theories for establishing a prima facie case of gender discrimination: showing intentional discrimination or proving disparate treatment. See *Storch v Beacon Hotel Corp*, 788 F Supp 960 (ED Mich, 1992). In this case, plaintiff is essentially alleging disparate treatment discrimination.

provide evidence sufficient to raise a reasonable, triable question of fact that she was similarly situated to Boczkaja, that the RIF was a mere pretext for discriminatory animus, and that gender was a determining factor in the employer's decision to demote and then discharge plaintiff.

As we clarified in *Town, supra* at 706, mere disproof of an employer's proffered "nondiscriminatory" reason is insufficient to survive summary disposition, unless such disproof also raises a triable question of discriminatory motive, not mere falsity. In this case, we find that plaintiff merely provided evidence to reasonably suggest that she and her supervisor had a personality conflict. Therefore, she has not raised a triable issue with regard to whether gender discrimination was a cause of her demotion or eventual discharge.

Indeed, plaintiff claimed that her "trouble" and conflict with her supervisor started in June of 1987, when she refused to wear a dress to the company picnic despite her supervisor's statement that he wanted "all the girls" to wear dresses to the function. Shortly after plaintiff refused to wear a dress, she claims her supervisor gave her her first critical evaluation in her twenty years with employer. She received another critical evaluation in September of that year following an altercation between her and her supervisor regarding EEO reports. Plaintiff contended that these evaluations were uncharacteristic of her job performance and previously favorable reviews. She also pointed out that such reviews usually only occurred annually.

Then, in January 1989, plaintiff's supervisor demoted her and simultaneously promoted Boczkaja to her managerial position. Boczkaja had less senior-

ity than plaintiff and less experience in human
resource work; in fact, plaintiff originally trained him
and served as his supervisor for some ten years.

Despite such evidence, we find that plaintiff failed
to raise a triable issue of fact that discriminatory ani-
mus was a motivating factor in her demotion and dis-
charge. With respect to Boczkaja's promotion, plain-
tiff failed to provide any evidence that she was simi-
larly situated. Rather, plaintiff admitted that Boczkaja
received a series of promotions on the basis of work
performance in his first two years on the job, and
under her tutelage. She also referred to him as a "fair"
person.

Plaintiff also failed to provide any evidence that
there was no change in her performance or in the
quality of her work product around the time of her
demotion, which occurred two years after defendant
Malady became her supervisor. She failed to provide
any evidence to show that her critical performance
evaluations were not merited. Rather, she admitted
that the recommendations were "seemingly neutral,"
even though both recommendations indicated that
her supervisor had concerns about her ability to man-
age employees. Moreover, there was no evidence that
performance reviews were not regularly filed after an
employee had a disagreement with a supervisor or
performed in a substandard manner.[32]

---

[32] The dissent finds significant the fact that no female employees who
wore dresses to the company picnic received negative evaluations. *Post* at
194. This evidence undercuts the dissent's argument, however, because it
tends to show that plaintiff received a negative evaluation because of her
refusal to follow Malady's directives, however antiquated or unreasonable.
Moreover, these women are in the same protected class as plaintiff
regardless of whether they wore skirts to the event.

Finally, with respect to plaintiff's discharge, there is no evidence, direct or otherwise, to indicate that a determinative factor in Roof's decision to discharge plaintiff was her gender. First, plaintiff's supervisor's motivations have no relevance regarding her discharge because Roof was the individual who targeted her position as a necessary cutback under the employer's RIF. Second, plaintiff did not dispute Roof's proffered reasoning that her duties were largely diminished, given her responsibility for hourly workers. Third, when plaintiff's duties were redistributed, they were assigned to seven employees, five of whom were also females, members of the protected class. Indeed, the employer presented statistical evidence that in 1991 the RIF resulted in termination of ninety-one employees, sixty-eight of whom were male. Fourth and finally, for reasons previously discussed, plaintiff failed to provide any evidence that she and Billingsley, a training specialist, were similarly situated with respect to job qualifications and duties.

For these reasons, viewing the evidence in a light most favorable to the plaintiff, we find that plaintiff failed to raise a triable issue of fact with regard to whether her demotion and discharge were a mere pretext for discrimination.[33]

---

For similar reasons, the poor performance evaluation that plaintiff received in September 1987 is further indicium of the growing personality conflict between plaintiff and her supervisor, rather than actionable discrimination. At most, plaintiff showed that Malady might have retaliated against her for drawing attention to his attempt to hire a friend for a position, rather than following established EEO file procedure.

[33] The dissent fails to understand how we can hold that no reasonable juror could find in favor of plaintiff as a matter of law "when three respected and unanimous Court of Appeals judges and four members of this Court have already held that on the very facts of this case, plaintiff presented an issue of fact for the jury." *Post* at 190-191. This reasoning,

We therefore affirm the trial court's grant of summary disposition for defendant regarding her gender discrimination claims.

IV

Accordingly, we reverse the decision of the Court of Appeals on all the issues before this Court and affirm the trial court's grant of summary disposition for the employer and supervisor.

We vacate our earlier opinion insofar as it is inconsistent with our discussion and decision in this case.

BOYLE and TAYLOR, JJ., concurred with WEAVER, J.

BRICKLEY, J.   I concur with the majority to the extent that it dismisses plaintiff's claims of age and sex discrimination. However, for the reasons set forth in my opinion in *Lytle v Malady*, 456 Mich 1, 67-68; 566 NW2d 582 (1997), I dissent from the majority's rationale regarding plaintiff's wrongful-termination claim. I would uphold summary disposition for the defendant because "plaintiff failed to raise a question of material fact that the defendant had just cause to terminate the plaintiff as part of its reduction in force."

MALLETT, C.J. *(concurring in part and dissenting in part)*. I concur with the majority's conclusion that the plaintiff cannot assert a legitimate expectation of just-cause employment because the handbook specifically disclaims any intent to create contractual or

---

however, must be flawed, because it would effectively deny this Court's appellate review whenever there was a consensus on the Court of Appeals and would render rehearing motions entirely obsolete. We refuse to so limit the appellate function of this Court and find in this case that it should be engaged.

binding obligations to employees. I also agree with the majority's conclusion that even when an employer demonstrates a bona fide reduction in force, a plaintiff may survive a motion for summary disposition by presenting sufficient evidence that the RIF was a mere pretext and that discriminatory animus was a true motivation behind the discharge. I further agree that the plaintiff has not presented sufficient evidence to survive summary disposition of her age discrimination claim. Consequently, I am in agreement with parts I, II, III(A), and III(B) of the majority opinion.

However, I disagree with the majority's conclusion that summary disposition of the plaintiff's gender discrimination claim was proper. For the reasons expressed in part II(C) of Justice CAVANAGH's dissent, I believe that there was sufficient evidence from which a reasonable person could find that the plaintiff's demotion was motivated by gender discrimination.

CAVANAGH, J. I respectfully dissent with respect to both the wrongful discharge and the sex discrimination claims in this case.

### I. WRONGFUL DISCHARGE

Plaintiff's wrongful discharge claim was premised on a just-cause termination policy contained in an employee handbook and verbal assurances made by her supervisor, John Ozar. I concur with the majority that the verbal statements were not sufficient to create a reasonable expectation of just-cause employment. However, I respectfully dissent from the portion of the opinion that relates to plaintiff's legitimate expectations of just-cause employment contained in the employee handbook. Because I find that reasonable minds could conclude that the employee hand-

book created a legitimate expectation of just-cause employment, I would hold that a question of fact existed precluding summary disposition in favor of defendants.

### A. THE EMPLOYMENT HANDBOOK PLAINTIFF RECEIVED IN 1973

As the majority recognizes, the handbook plaintiff received when she was hired in 1973 stated in relevant part, "No employee will be terminated without proper cause or reason and not until management has made a careful review of the facts." It also stated, "The contents of this booklet are not intended to establish, and should not be interpreted to constitute any contract between . . . any employee . . . ." The majority relies on *Heurtebise v Reliable Business Computers, Inc*, 452 Mich 405; 550 NW2d 243 (1996), to state that "provisions in a handbook will not create enforceable rights when the handbook expressly states that such provisions are not intended to create an employment contract." *Ante* at 169. I disagree that *Heurtebise* compels summary disposition against the plaintiff.

First, the majority states that "the handbook specifically disclaims any intent to create contractual *or binding obligations to employees." Ante* at 157 (emphasis added). However, the disclaimer *only* relates to "contractual obligations." Recall, the provision states, "The contents of this booklet are not intended to establish . . . any contract . . . ." The distinction is significant as it relates to this case.

As this Court stated in *Rood v General Dynamics Corp*, 444 Mich 107, 118; 507 NW2d 591 (1993), a legitimate-expectations analysis is not a contract analysis:

In other words, there are two alternative theories of enforceabliity that may support a claim of wrongful discharge in Michigan. While the first theory is grounded solely on contract principles "relative to the employment setting," *Rowe* [*v Montgomery Ward & Co, Inc*, 437 Mich 627, 632; 473 NW2d 268 (1991)], the second theory is grounded solely on public policy considerations. As Justice BOYLE noted in her concurring opinion in *In re Certified Question (Bankey v Storer Broadcasting Co)*, 432 Mich 438, 458; 443 NW2d 112 (1989), "the pure legitimate expectations leg of *Toussaint* [*v Blue Cross & Blue Shield of Michigan*, 408 Mich 579; 292 NW2d 880 (1980)] was founded on the Court's common-law authority to recognize" enforceable obligations that arise " 'outside the operation of normal contract principles.' "

Indeed, Justice BOYLE stated that where the enforceable obligation arises out of a personnel policy handbook, a "contract theory is not appropriate . . . ." *In re Certified Question, supra* at 458 (BOYLE, J., concurring).

Therefore, a disclaimer of *contractual* intent should have no effect on a policy contained in a handbook that gives rise to legitimate expectations of just-cause employment that are "outside the operation of normal contract principles." *Heurtebise* is inapplicable because it was not grounded on a "legitimate expectations theory"; rather, it was grounded on a theory that the plaintiff was *contractually* obligated to arbitrate her civil rights claims.[1] We stated in *Heurtebise* that

---

[1] At oral argument, the attorney for the defendants stated that the only difference between this case and *Heurtebise* is that in this case the employee is trying to enforce a just-cause provision of a handbook rather than an arbitration provision. However, as noted above, this statement is incorrect. *Heurtebise* dealt with whether there was a *contractual* obligation to arbitrate, despite a *contractual* disclaimer. This case deals with the legitimate expectations of just-cause employment that arise *outside* the normal operation of contract principles. Therefore, a contractual dis-

"[i]t is undisputed that an arbitration provision is unenforceable if it is not a binding *contract.*" *Id.* at 413 (emphasis added).[2]

In *Rood, supra* at 139, we stated, "Once it is determined that a promise has been made, the second step is to determine whether the promise is reasonably capable of instilling a legitimate expectation of just-cause employment . . . ." I would hold that the employer's policy stating that "[n]o employee will be terminated without proper cause or reason" is reasonably capable of instilling a legitimate expectation of just-cause employment. Because I believe the contractual disclaimer did not contradict the just-cause provision, I would hold that a question of fact exists whether plaintiff had a legitimate expectation of just-cause employment.

The majority does not reach the remaining issues in plaintiff's wrongful discharge claim because it holds that no reasonable person could find that plaintiff had

---

claimer should have no effect on a policy arising outside the operation of those principles.

[2] Even if we proceed under the majority's theory of a "contractual" disclaimer, plaintiff should prevail under well-established rules governing contract law. A basic rule of contract law is that contradictory terms or meanings are construed against the drafter. In *Raska v Farm Bureau Mut Ins Co of Michigan*, 412 Mich 355, 362; 314 NW2d 440 (1982), this Court held that a contract is ambiguous when its words reasonably may be understood in different ways. If, fairly read, the contract leads to two reasonable but conflicting interpretations, it is ambiguous and should be construed against the drafter. In this case, the drafter of the handbook was the defendant. Hence, the issue whether plaintiff was reasonable in expecting just-cause employment should at least be a question for the jury. The defendant created security in its work force by expressing in its policy manual that its employees will be discharged only for cause, yet at the same time it stated that it did not want to be contractually bound to any of its statements. Because these two statements may be perceived as contradictory under *contract* principles, plaintiff's claim should also proceed to the jury under a contract theory.

a legitimate expectation of just-cause employment (despite an express statement indicating such employment in her employment manual). Therefore, for the reasons already set forth by the majority in *Lytle v Malady*, 456 Mich 1; 566 NW2d 582 (1997), I dissent from the majority's disposition and result of plaintiff's wrongful discharge claim.

## II. THE DISCRIMINATION CLAIMS

Plaintiff alleges that she was discriminated against on the basis of her age and sex. The issue presented is whether she has demonstrated sufficient evidence of age or sex discrimination to survive defendant's motion for summary disposition.

### A. SUMMARY DISPOSITION STANDARD

A court reviewing a motion for summary disposition must consider the pleadings, affidavits, depositions, admissions, and any other evidence *in favor of the party opposing the motion, and grant the benefit of any reasonable doubt to the opposing party. Stevens v McLouth Steel Products Corp*, 433 Mich 365, 370; 446 NW2d 95 (1989). As this Court stated in *Radtke v Everett*, 442 Mich 368, 374, n 3; 501 NW2d 155 (1993):

> The alternative would require our abandonment of what has been called the "truth-testing process of cross-examination" and would encourage unwarranted invasion by judges of the jury's exclusive province. [Citations omitted.]

In this case, I fail to understand how the majority can state that *no* reasonable juror could find in favor of plaintiff, as a matter of law, when three respected and unanimous Court of Appeals judges and four

members of this Court have already held that on the very facts of this case, plaintiff presented an issue of fact for the jury. At the summary disposition stage, the only question is whether, in the light most favorable to the plaintiff, *any reasonable person* could find in favor of plaintiff. Seven current and former judges of this state have held that the answer is "yes." Therefore, I respectfully dissent.[3]

### B. PROOF REQUIRED UNDER THE CIVIL RIGHTS ACT

At oral argument, the defendant argued that the *McDonnell Douglas Corp v Green*[4] burden-shifting test does not apply because, in a reduction-in-force situation, there is no "replacement." However, the defendant is incorrect that the burden-shifting test "just doesn't work" under the facts of this case. As this Court stated in *Town v Michigan Bell Telephone Co*, 455 Mich 688; 568 NW2d 64 (1997), a plaintiff does not have to prove she was "discharged" and "replaced" to prove a prima facie case. Indeed, we stated:

> The . . . prima facie approach requires an employee to show that the employee was (1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and that (4) others, similarly situ-

---

[3] The majority states that "[t]his reasoning . . . would effectively deny this Court's appellate review . . . and would render rehearing motions entirely obsolete." *Ante* at 184-185, n 33. Apparently the majority misses the point. I do not dispute that rehearings are appropriate, and indeed sometimes necessary to clarify or change an opinion previously issued. However, where the issue is whether *any* reasonable person could find in favor of plaintiff on these facts, the fact that seven judges have answered this question "yes" only demonstrates that it is not impossible for reasonable jurors to agree with plaintiff as well.

[4] 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

ated and outside the protected class, were unaffected by
the employer's adverse conduct. [*Id.* at 695.]

However, as a tangential issue, the difficulty is
determining what amount of proof is necessary to
survive summary disposition. The problem is that
each case comes with its particular facts and circum-
stances, making it difficult to set a "formula" for
determining what evidence is "necessary" in each
case.

I believe that, as a practical matter, applying
*McDonnell Douglas* to any case should not make it
any easier or any more difficult for a plaintiff to show
an issue of fact for the jury, than it would be if the
test never existed. I believe proper application of
*McDonnell Douglas* supports this, as does this Court's
opinion in *Town*.

Once the plaintiff proves a prima facie case, and
the defendant has articulated its legitimate business
reason for the adverse employment action, the plain-
tiff bears the ultimate burden of showing that a genu-
ine issue of material fact exists whether the plaintiff
was fired because of discrimination. All plaintiff's evi-
dence should be considered at this final stage, includ-
ing her prima facie evidence.

The proofs offered in support of the prima facie case may
be sufficient to create a triable issue of fact that the
employer's stated reason is a pretext, as long as the evi-
dence would enable a reasonable factfinder to infer that the
employer's decision had a discriminatory basis. [*Id.* at 697.]

As is required of any case, "the evidence must cre-
ate a material issue of fact on which reasonable
minds could conclude that the employer's stated rea-

son is a pretext for discrimination for summary judgment to be precluded." *Id.* at 698.

### C. PLAINTIFF PRESENTED A QUESTION OF FACT REGARDING SEX DISCRIMINATION

The facts that support plaintiff's claim of sex discrimination have now been laid out in sufficient detail in one decision of the Court of Appeals and two decisions of this Court. Therefore, I will only list those relevant factors that plaintiff asserts support her claim:

1. In 1987, plaintiff was ordered by Malady that all the "girls" must wear dresses to the company open house.

2. Plaintiff told Malady that she did not want to wear a dress.

3. Plaintiff had never been required to wear a dress to the open house in the preceding fourteen years she worked at defendant company.

4. Plaintiff did not wear a dress to the company open house.

5. Within *one week* of the June open house, Malady gave Lytle her first negative performance evaluation.[5]

6. The company policy was to give performance evaluations in December of each calendar year.

---

[5] The majority states that it was within three months after the open house that plaintiff received the negative performance evaluation. While she also received one in September 1989, plaintiff received her first negative performance evaluation within one week of the open house.

7. No female employee who wore a dress to the company picnic was treated adversely by Malady.

8. In September 1987, plaintiff was not consulted regarding an affirmative action hiring by Malady.

9. Plaintiff was responsible for administration of the company's affirmative action program.

10. Malady hired a friend for the position.

11. Plaintiff complained to Malady, who did not respond.

12. Plaintiff complained to Malady's supervisor.

13. Malady's supervisor issued a memorandum to Malady remonstrating him for interfering with Lytle's responsibilities and failure of communication.

14. Within one to two weeks of the memorandum issued by Malady's supervisor, Malady made his second, negative performance evaluation of plaintiff, in September 1987.

15. Malady failed to do a December 1987 or any 1988 performance evaluation of plaintiff.

16. In January 1989, without warning, plaintiff was demoted to human resources specialist.

17. Plaintiff was replaced by Walter Boczkaja, a male.

18. Boczkaja had been Lytle's subordinate for the previous ten years.

19. When Boczkaja was originally hired, plaintiff trained him.

20. After 1989, plaintiff began reporting to Boczkaja.

21. After the negative performance evaluations by Malady, subsequent performance evaluations of plaintiff were done by Boczkaja, and all were satisfactory.

The majority contends that "plaintiff failed to provide any evidence that she was similarly situated [to Boczkaja]." *Ante* at 183. In fact, plaintiff presented evidence that she was more qualified: She not only trained Boczkaja, she *supervised* him for the ten years preceding his promotion to her position, and her demotion. The majority contends that Boczkaja received a series of promotions on the basis of his work performance for his first two years on the job. However, the majority ignores the fact that plaintiff received outstanding performance evaluations and promotions over the preceding fourteen years of her employment. In fact, she was promoted from clerk typist, when she was first hired, to employment manager under the human resources director John Ozar.

The majority contends that plaintiff failed to provide any evidence that her performance or quality of her work product did not decline over time. However, even as the majority opinion recognizes, "Plaintiff contended that these evaluations were *uncharacteristic* of her job performance . . . ." *Id.* at 182 (emphasis added). To be true to summary disposition, the majority must take plaintiff's testimony *in the light most favorable to her.* Therefore, even assuming defendant's position that the quality of plaintiff's performance declined in 1987, plaintiff contended that her performance did not decline, and the issuance of the negative performance evaluations was a pretext

for discrimination. This is a factual dispute for the jury to decide.

In support of plaintiff's contention that her performance did not decline, is the timing of the negative performance evaluations. A reasonable inference could be drawn that the performance evaluations were not issued because of poor performance, rather they were issued because of Malady's discriminatory intent. First, the evaluations had never been issued before December. Second, the evaluations each were issued within seven to fourteen days of the incidents relating to "all the girls" must wear dresses and the "affirmative action" policy of the company. Third, how could plaintiff show her performance was either good or bad from September 1987 through December 1988 when Malady failed to give her a performance evaluation in December 1987 or at any time during 1988? After fifteen months without any review by Malady, in January 1989, she was demoted by Malady. Finally, once Boczkaja began evaluating her instead of Malady, her reviews were increased to a satisfactory level.

I would hold that there was more than ample evidence from which a reasonable person could find that plaintiff was discriminated against on the basis of her sex in the events leading up to, and ultimately resting on, her demotion. Certainly, all should agree that a demotion is an adverse employment action.

As a final point, the majority takes issue with plaintiff's sex discrimination claim because, with respect to plaintiff's ultimate discharge, Roof was the person who fired her, not Malady. However, a reasonable inference is that Roof's decision to terminate plaintiff was because of her two negative performance evalua-

tions and her subsequent demotion, all of which were made by Malady. In fact, plaintiff noted that Boczkaja testified at his deposition that Malady participated with Roof in the decision with respect to the plaintiff. While defendants obviously contend that the decision was made because of economic reasons, this factual dispute is improperly resolved by the majority instead of by a jury.

Additionally, the mere fact that plaintiff's duties were redistributed to seven employees, five of whom were women, proves nothing. There is no evidence to show whether these women objected to wearing dresses to the open house, whether they wore dresses to the open house, or whether they asserted their right to have the affirmative action policy implemented properly.

Therefore, while defendant asserted that it was conducting a reduction in force, and while I would hold that the reduction in force was genuine, factual questions remain whether plaintiff was terminated as a result of the RIF or as a result of unlawful discrimination.

### D. AGE DISCRIMINATION

I concur with the result of the majority in regard to plaintiff's age discrimination claim. However, if, on remand, plaintiff were able to produce the evidence that the company was hiring more employees during the alleged RIF, and plaintiff were able to show that they were younger than the employees allegedly terminated as a result of the RIF, she may have presented sufficient evidence to survive summary disposition on her age discrimination claim.

KELLY, J., concurred with CAVANAGH, J.