H. Robert **HIGHSTONE, Sr.,**
**Plaintiff–Appellant,**

v.

**WESTIN ENGINEERING,**
**INCORPORATED, Defendant–Appellee.**

No. 98–1548.

United States Court of Appeals,
Sixth Circuit.

Argued: June 15, 1999.

Decided and Filed: Aug. 9, 1999.

Beth M. Rivers (briefed), Gerald D. Wahl (argued and briefed), Wahl & Rivers, Detroit, Michigan, for Plaintiff–Appellant. Michael L. Harrison (argued and briefed), Harris & Kaylor, San Jose, California, for Defendant–Appellee.

Before: MARTIN, Chief Judge; JONES and SUHRHEINRICH, Circuit Judges.

## OPINION

BOYCE F. MARTIN, JR., Chief Judge.

H. Robert Highstone, Sr. appeals judgment for Westin Engineering, Inc. in his employment discrimination action. Highstone alleges that an enforceable employment contract existed which was based on oral statements made by a Westin executive pertaining to job security and upon written provisions in the employee policy manual. Highstone argues that this "contract" prohibited Westin from terminating him absent just cause. The district court disagreed and found that Highstone was an at-will employee, and therefore Westin could properly terminate him for lack of work. We affirm.

### I.

In September 1992, H. Robert Highstone, Sr. began working for Westin Engineering, Inc. as Principal Engineer and Project Manager in Detroit. Prior to his start date, Westin executives interviewed Highstone. Highstone alleges that during the interview he conveyed to Ron Lauer, Chief Engineer, his concern for long-term employment. According to Highstone, Lauer responded that there would be plenty of work in the Detroit office because of a contract with the Detroit Water and Sewerage Department. Lauer disputes that he made such assurances to Highstone. We assume for purposes of our analysis that Highstone's version of the conversation is accurate. The water and sewerage project involved a contract for $25 million over five years. Highstone claims he told Lauer that he preferred to work in the Detroit office because it offered the most secure job. Highstone stated that he billed approximately sixty percent of his time in the first ten months to the water and sewerage project.

At the beginning of his employment, Highstone signed an "Employee Agreement" dated September 28, 1992, wherein he agreed that "I will keep informed of and abide by all current company policies and procedures" and acknowledged that "I understand that this Agreement is not a contract of employment or a guarantee of continuing employment." Highstone also received a copy of Westin's policy manual.

In 1995, Westin informed Highstone that at the start of the fiscal year, it expected approximately $500,000 in revenue from non-water and sewerage projects. However, midway through the year, Westin had received less than $25,000 and did not expect to obtain significant revenue in the last six months of the fiscal year. Accordingly, Westin terminated Highstone due to lack of work on April 28.

On July 16, 1996, Highstone brought suit against Westin alleging breach of contract and age discrimination in violation of Michigan's Elliott–Larsen Civil Rights Act, MCLA § 37.2101, et seq. During the litigation Highstone voluntarily dismissed the age discrimination claim against Westin. Highstone later amended his complaint to include a claim for breach of legitimate expectations arising from Westin's employee policy manual. Jurisdiction was proper in the district court pursuant to 28 U.S.C. § 1332. On April 13, 1998, the district court granted summary judgment in favor of Westin on the breach of contract and breach of legitimate expectations claims. Highstone filed a timely notice of appeal on May 7. We have jurisdiction pursuant to 28 U.S.C. § 1291.

### II.

We review a district court's grant of summary judgment *de novo*.

*Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1176 (6th Cir.1996). Summary judgment is appropriate if, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether the evidence presents a sufficient disagreement to require submission to the factfinder or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Highstone claims that under Michigan law an express and implied contract of employment existed based on the oral statements made by a Westin executive during the pre-hiring interview. He also claims that Westin created legitimate expectations of job security in its policy manual, which he alleges contains just-cause promises. Highstone argues that Westin breached this "contract" when it terminated him absent just cause.

 Under Michigan law employment relationships are presumptively terminable at the will of either party. *See Lynas v. Maxwell Farms*, 279 Mich. 684, 273 N.W. 315, 316 (Mich.1937). However, the presumption of employment at will can be rebutted so that contractual obligations and limitations are imposed on the employer's right to terminate. *See* Toussaint v. Blue Cross & Blue Shield of Mich., 408 Mich. 579, 292 N.W.2d 880, 885 (Mich. 1980). To overcome this presumption, the plaintiff may produce evidence that proves either the existence of an express contract for a definite term of employment or a provision forbidding discharge absent just cause. *See Rowe v. Montgomery Ward*, 437 Mich. 627, 473 N.W.2d 268, 271 (Mich. 1991). The presumption may also be overcome by an express agreement, either written or oral, regarding job security that is clear and unequivocal. *See id.* Furthermore, an employer's written policies and procedures may create an enforceable contract if they instill a "legitimate expectation" of job security in the employees. *See Rood v. General Dynamics Corp.*, 444 Mich. 107, 507 N.W.2d 591, 598 (Mich. 1993).

## A.

 Highstone's claim of just-cause employment is premised upon certain oral statements which Lauer made during the pre-hiring interview. In evaluating these statements, the Michigan approach is to determine the meaning reasonable people would attach to the language, given the circumstances presented. *See Rowe*, 473 N.W.2d at 273. In *Rowe*, the Michigan Supreme Court held that an oral contract for job security should be recognized only where the circumstances suggest that both parties intended to be bound. *Id.* at 271. Moreover, oral statements of job security must be "clear and unequivocal to overcome the presumption of employment at will." *Id.* at 275.

Highstone alleges that, during his pre-hiring interview with Westin executives, he was assured job security, which he relied on in deciding to accept the position. In his deposition, Highstone states that he told Lauer that he was seeking a job that would be "stable and assured." Westin responded that there was plenty of work in the Detroit office especially because of the water and sewerage project. Highstone argues that mutual assent was obtained and that as a result a contract for just-cause employment was created. However, these statements only reveal a broad representation on the part of Westin that Detroit offered the most work for Highstone, not a promise of a secured job. These oral statements only amount to expressions of "optimistic hope" for a long-term employment relationship. *Id.* at 273.

Again, in *Lytle v. Malady*, 458 Mich. 153, 579 N.W.2d 906, 914 (Mich.1998), the Michigan Supreme Court when reviewing an employment contract found that statements made by a supervisor that plaintiff's job was secure and subject to further advancement did not create a just-cause employment relationship. Instead, these statements merely indicated hope for a "long and satisfying employment relationship." *Id.* Likewise, in this case, there was no indication of an actual negotiation or an intent to contract for just-cause employment. Highstone admits in his deposition that at no time did he discuss with anyone at Westin the issue of cause for termination, nor did he discuss any ground for which he could be terminated. *See id.* (relying on the fact that no specific statements of the grounds for termination were discussed). The district court considered all of this and held that a reasonable juror would not have found that the oral statements made during the interview constituted a contract for just-cause employment under *Rowe*. Therefore, the district court granted Westin's motion for summary judgment as to the breach of contract claim. Clearly the oral statements made during the pre-hiring interview were not sufficient to create a reasonable expectation of just-cause employment.

## B.

■ Next, we look to whether Westin's employee policy manual created a legitimate expectation of just-cause employment. In *Toussaint*, 292 N.W.2d at 890, the Michigan Supreme Court acknowledged that written statements in a company policy and procedure manual could create enforceable rights in contract if these statements give rise to a legitimate expectation of just-cause employment.[1] Michigan courts have recognized a two-step inquiry to evaluate legitimate-expectations claims. *See Rood*, 507 N.W.2d at 606–07. The first step is to decide "what, if any-

thing, the employer has promised," and the second step requires a determination of whether that promise is "reasonably capable of instilling a legitimate expectation of just-cause employment...." *Id.*

In this case, Highstone's proof lacks both the specificity and commitment to raise Westin's policies to the level of a promise. First, the policy manual contains specific contract disclaimers that expressly state that "neither the Employee Agreement, nor this manual are guarantees of continuing employment." More explicitly, in the section titled, "Application of Contents," the manual states that "[i]t is not a contract with any employee." In *Lytle*, 579 N.W.2d at 911–12, the Michigan Supreme Court found that an employer's policy handbook containing a specific contract disclaimer similar to the one in this case could not reasonably be capable of instilling a legitimate expectation of just-cause employment. Second, Westin reserved the right to terminate any of its employees at any time due to "lack of work, re-organization, or similar reasons where such termination is in the best interest of the company." The manual also provided a non-exclusive list of ways an employee can be terminated for cause. The Michigan Supreme Court held in *Rood* that "[a] nonexclusive list of common-sense rules of behavior that can lead to disciplinary action or discharge, clearly reserves the right of an employer to discharge an employee at will." *Id.* at 608. Finally, there is no express or implied discharge-for-cause-only policy statement located anywhere in Westin's manual. Westin's policy manual cannot reasonably be interpreted as instilling legitimate expectations of just-cause employment.

■ During Highstone's employment Westin revised its manual as a result of its experience in a lawsuit in California, which raised the issue of whether the actual term, "at-will," was needed in the policy

---

1. In *Toussaint*, 292 N.W.2d at 884, the manuals contained a provision not to terminate other than for just cause. There is no such provision in Westin's manual.

manual. The revisions to the manual were substantially completed by late 1994 and published on-line on March 16, 1995, one month before Westin terminated Highstone. At that time, Westin sent an e-mail message to all employees advising them of the changes. Notice was also given during staff meetings, which employees often attend. At the time of Highstone's termination, the manual read as follows:

> Note that all Westin employees are **at-will** employees and that neither the Employee Agreement nor this manual are guarantees of continuing employment. (emphasis added).

Westin has the right to unilaterally change provisions in its manual. In *In re Certified Question (Bankey v. Storer Broad. Co.)*, 432 Mich. 438, 443 N.W.2d 112, 113 (Mich.1989), the Michigan Supreme Court held that a company's written policy statements, which created a legitimate expectation in the employee of discharge for cause only, could be unilaterally modified by the employer. The court also held that the employer must reasonably notify all of the affected employees of the change. *Id.*

The record shows that Westin sent two e-mails notifying its employees of changes to the policy manual and published the manual on-line so all employees could have easy access to the manual. Westin satisfied its burden by reasonably notifying affected employees of the changes to the manual. Although Highstone claims he did not receive the revised manual, this does not matter because the addition of the term, "at-will," did not change Highstone's status as an at-will employee, it only clarified his employment. The original manual Highstone received did not contain any just-cause promises, and therefore he was an at-will employee during his employment at Westin regardless of the change in the manual.

### III.

For all of the reasons set forth above, we **AFFIRM** the district court's grant of summary judgment in favor of Westin Engineering, Inc.