Francis E. REYNOLDS, Plaintiff,

v.

Rodney FERGUSON, Gregg D. Peters, Steven Wilder, Martha Dobbins, James Longhurst and Starr Commonwealth Schools, a Michigan non-profit corporation, jointly and severally, Defendants.

No. 1:98–CV–914.

United States District Court,
W.D. Michigan,
Southern Division.

Oct. 13, 1999.

Michael A. Reynolds, Southfield, MI, for Reynolds, plaintiff.

Charles S. Mishkind, Miller, Canfield, Paddock & Stone, PLC, Grand Rapids, MI, Pamela Chapman Enslen, Miller, Canfield, Paddock & Stone, Kalamazoo, MI, for defendants.

Pamela Chapman Enslen, Miller, Canfield, Paddock & Stone, Kalamazoo, MI, for Alvin E. Ness, Jointly and Severally, defendant.

## OPINION

QUIST, District Judge.

Plaintiff, Francis E. Reynolds ("Reynolds"), filed this case in Calhoun County Circuit Court. Defendants removed the case to this Court based on federal question jurisdiction alleging that Reynolds' breach of contract claim was preempted by § 301 of the Labor Management Relations Act ("LMRA"). Now before the Court are Reynolds' motions for leave to amend the complaint, to add Arlin E. Ness ("Ness") as a defendant, to dismiss Defendant Starr Commonwealth Schools ("Starr"), and to remand the case back to state court.

### Facts

Reynolds was employed by Starr working with children as a Family Service Counselor. Reynolds' employment was subject to a collective bargaining agreement ("CBA"). Reynolds alleges that throughout his employment he was led to believe that Starr was operated as if it were a family, of which Reynolds was an integral part. Reynolds' belief in the "Starr Family" concept was bolstered by Christmas cards and memos sent by Ness, Starr's president, commenting on the deep commitment between members of the Starr Family.

Reynolds alleges he was betrayed by the Starr Family when Reynolds followed the example of his supervisor and allowed a child in his care to take a puff of his cigar and gave another child a cigar butt. Reynolds claims that these actions should have been reviewed and dealt with at the next team meeting of his co-workers. Instead, after disclosing these acts to his superiors, Reynolds was suspended without pay and without the benefit of a team meeting. Then, after a warrant was issued for Reynolds' arrest for two counts of furnishing tobacco to a minor, Reynolds was discharged—again without the benefit of a team meeting.

Based on the alleged misrepresentations of the "Starr Family" concept by Defen-

dants and Reynolds' subsequent discharge without benefit of a team meeting for evaluation of Reynolds' behavior, Reynolds alleges fraud and concert of action claims against each Defendant.

### Discussion

**A. Reynolds' Motion for Leave to Amend the Complaint**

■ Reynolds moves to amend his complaint, removing his original claims and adding claims for fraud and concert of action in place of the original claims, under Fed.R.Civ.P. 15(a). Rule 15(a) allows for amendment of a complaint by leave of the court or by written consent of the adverse party. *See* Fed.R.Civ.P. 15(a). Further, leave is freely given where justice so requires. *See id.* In their response to Reynolds' motion, Defendants consent to the amendment, so long as the original claims are dismissed with prejudice. *(See* Defendants' Resp.Br. at 2–3). While dismissal with prejudice appears to be a novel issue in the Sixth Circuit, the Ninth Circuit has held that amended complaints that do not somehow incorporate the original complaint, waive all causes of action not referenced therein. *See London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir.1981).

As a result, Reynolds' motion to amend will be granted, but his claims from the original complaint, none of which is included in the amended complaint, will be dismissed with prejudice.

**B. Reynolds' Motion to Add Arlin E. Ness as a Party Defendant**

■ Reynolds moves under Fed. R.Civ.P. 19 to add Ness as a necessary party. Reynolds contends that leaving Ness out of the suit would cause the other jointly and severally liable defendants to be obligated to Reynolds in disproportionate amounts. However, the Supreme Court has specifically held that joint tortfeasors are not necessary parties once one or more are included in the suit. *See Temple v. Synthes Corp.*, 498 U.S. 5, 8, 111 S.Ct. 315, 316, 112 L.Ed.2d 263 (1990) (per curiam). As a result, Ness cannot be added as a necessary party.

■ However, motions to amend pleadings to add parties may be treated as motions to add parties under Fed.R.Civ.P. 21. *See* 4 James Wm. Moore, et al., *Moore's Federal Practice* § 20.02[2][a][ii] n. 29 (3d. ed.1998). Fed.R.Civ.P. 20(a) allows for permissive joinder where parties are related to the case by both a common question of law and a common transaction. *See Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 682 (6th Cir.1988). Such joinder is granted based on fairness and given liberally. *See* 4 James Wm. Moore, et al., *Moore's Federal Practice* § 20.02[1][a] n. 11–12 & accompanying text (3d. ed.1998). As a result, Reynolds will be granted leave to join Ness as a defendant in the suit. If, as Defendants claim, Reynolds does not have a case against Ness, that will become evident in due course and Ness can be dismissed upon proper motion or after trial.

**C. Reynolds' Motion to Dismiss Starr as a Party Defendant**

Reynolds moves to dismiss Starr under Fed.R.Civ.P. 41(a)(2). However, as explained below in Section D., Reynolds' state law claims are preempted by LMRA § 301. As a result, the CBA between Starr and Reynolds' union will necessarily be implicated. Further, Defendants are correct in pointing out that in his amended complaint, Reynolds continues to reference Starr. *(See* Reynolds' Proposed First Am. Compl. ¶¶ 6, 11, and 12) Therefore, Reynolds' motion to dismiss Starr will be denied.

**D. Reynolds' Motion to Remand to State Court**

Defendants removed the case to this Court on the basis that Reynolds' claims actually relate to a collective bargaining agreement that are cognizable only under § 301 of the LMRA, 29 U.S.C. § 185, and therefore are preempted by the LMRA.

■ Reynolds contends that the instant motion is governed by the well-plead-

ed complaint rule, which provides that the plaintiff is the master of his claim and is free to avoid federal court jurisdiction by relying exclusively on state law. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). It is well established that a federal defense, including the defense of federal preemption, will not defeat the well-pleaded complaint rule. *See id.* at 392–93, 107 S.Ct. at 2430. However, a corollary to the well-pleaded complaint rule is the "complete preemption doctrine." Under that doctrine, if "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim,'" then any claim arising out of the preempted state law is considered a federal claim. *Id.* at 393, 107 S.Ct. at 2430 (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987)). The complete preemption doctrine applies to cases raising claims preempted by § 301 of the LMRA. *See DeCoe v. General Motors Corp.*, 32 F.3d 212, 216 (1994).

■ The artful pleading doctrine is also an exception to the well-pleaded complaint rule. The doctrine states that a claim is properly in federal court if the plaintiff has failed to plead necessary federal questions or when the real nature of the claim asserted is federal. *See Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 474, 118 S.Ct. 921, 925, 139 L.Ed.2d 912 (1998). Artful pleading has been applied primarily in cases involving the complete preemption doctrine. *See* 14B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3722 (1998).

In *Caterpillar*, the Supreme Court held that removal was improper under the well-pleaded complaint rule because the plaintiffs' breach of contract claims were based upon individual employment contracts rather than upon the collective bargaining agreement. *See Caterpillar*, 482 U.S. at 396–97, 107 S.Ct. at 2431–32. The Court

noted that "a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights," and concluded that the plaintiffs' claims were not preempted because they did not arise out of or require interpretation of a collective bargaining agreement. *Id.* (italics in original).

■ In analyzing whether § 301 of the LMRA preempts a state law claim, the Sixth Circuit has employed a two-part analysis in applying § 301 preemption to state law claims. First, § 301 preemption applies if proof of the state law claim requires interpretation of the collective bargaining agreement (CBA). *See DeCoe*, 32 F.3d at 216. The plaintiff must prove all of the elements of his claim without the necessity of interpretation of a CBA. *See id.* Second, a state law claim is preempted where the right claimed is created by the CBA. *See id.* If one or both of these circumstances are present, then § 301 preemption is warranted. *See id.*; *Terwilliger v. Greyhound Lines, Inc.*, 882 F.2d 1033, 1038 (6th Cir.1989) (holding state law claim preempted where construction of the collective bargaining agreement was required to resolve the claims and the rights asserted and the relationship between the parties was created by the collective bargaining agreement).

The Sixth Circuit has addressed § 301 preemption of fraud claims in several cases. In *Terwilliger*, the plaintiff had been employed as a bus driver for Greyhound but was placed on disability status due to a heart condition. Several years later, the plaintiff reapplied for employment with Greyhound after he passed a Department of Transportation ("DOT") physical exam. The plaintiff submitted his own doctor's recommendation of fitness along with his employment application. Greyhound referred the plaintiff to an independent physician for a second examination pursuant to the collective bargaining agreement. The second physician, Dr. Kantor, issued an initial report recommending against employment on the bases

that the plaintiff's vision was below standard and his file contained a DOT code relating to heart disease. Greyhound asked Dr. Kantor to clarify his findings, and he issued a second report which stated that the plaintiff's vision was below standard and that his heart condition did not meet Greyhound's internal standards, even though it met DOT standards. The union and Greyhound then agreed that the plaintiff would be examined by a third physician, Dr. Breneman, who concluded that the plaintiff should not be reemployed because of his heart condition. Based upon Dr. Breneman's report, the union told the plaintiff that it could not do anything more for him. Several years later, the plaintiff obtained an internal Greyhound memo which he contended demonstrated that Greyhound fraudulently withheld Dr. Kantor's second report in order to secure the union's agreement to an examination by Dr. Breneman as part of Greyhound's plan not to rehire the plaintiff. The plaintiff then sued Greyhound alleging fraud and other state law claims.

The Sixth Circuit held that the plaintiff's fraud and misrepresentation claim was preempted by § 301. *See Terwilliger*, 882 F.2d at 1038. The court reasoned that the plaintiff's claim was essentially that Greyhound failed to abide by the terms of the CBA when it negotiated with the union for an examination by a third physician and that resolution of the claim would require interpretation of the CBA. *See id.* at 1037–38. In addition, the court found that the claim was preempted because the right which the plaintiff sought to enforce, i.e., reemployment, was created by the CBA and the CBA was "the only basis for the relationship between [the plaintiff] and Greyhound." *Id.* at 1038. Thus, the court found that "both triggers of section 301 preemption [were] present." *Id.*

In *Fox v. Parker Hannifin Corp.*, 914 F.2d 795 (6th Cir.1990), the plaintiff alleged that the employer committed fraud by making false representations in the investigation of her complaints and grievances. The court found that the claim was preempted by § 301, reasoning that

> [t]he plaintiff seemingly has predicated her fraud claim solely upon the manner in which the Company and the Union carried out the CBA-defined process of reviewing her various grievances. Such a claim, which directly implicates both the substantive and procedural aspects of the CBA grievance provisions, clearly falls within the ambit of section 301 preemption in the same manner a the plaintiff's fraud claim in *Terwilliger* ... [,] where the CBA "create[d] the right to re-employment claimed by Terwilliger and provide[d] the only basis for the relationship between Terwilliger and [his employer]."

*Fox*, 914 F.2d at 802.

 Applying the reasoning of *Terwilliger* and *Fox* to Reynolds' concert of action claim, the Court concludes that § 301 preempts the claim. Reynolds' concert of action claim is essentially that Defendants fraudulently induced Reynolds to believe that he was a member of the Starr Family and would be treated as such. (*See* Proposed Am.Compl. ¶ 49–51.) To prevail on a fraud claim, Reynolds must show that Defendants' misrepresentations were material and that Reynolds relied on the misrepresentation to his detriment. *See Pitsch v. ESE Michigan, Inc.*, 233 Mich.App. 578, 599, 593 N.W.2d 565, 576 (1999). In order to determine whether Reynolds has proved these elements, the Court would be required to interpret the terms of the CBA to determine the circumstances under which Reynolds could be discharged and whether Defendants' misrepresentations were material, in the sense that Reynolds would not have been discharged in the absence of Defendants' misrepresentations.[1]

---

1. In *Highstone v. Westin Eng'g, Inc.*, 187 F.3d 548 (6th Cir.1999), the Court held that the employer's multiple oral assurances of Plaintiff's job security were only "expressions of 'optimistic hope'" and were not sufficient to create any contractual obligations beyond the existing employment contract. *Id.* at 551-52

In *DeCoe*, the plaintiff brought a defamation claim in relation to sexual harassment allegations. *See DeCoe*, 32 F.3d at 214–15. The court analyzed the § 301 preemption issue by applying the elements of a defamation claim under Michigan law, which include the requirement that the plaintiff show an unprivileged publication to a third party. *See id.* at 217. The court held that since the CBA incorporated a sexual harassment policy, including a grievance and arbitration procedure, and imposed a duty upon General Motors and the union to identify and resolve sexual harassment complaints, the plaintiff could not prove the element of unprivileged publication to a third party without interpreting the terms of the CBA. *See id.*

In this case, the allegedly defamatory statements made by Defendants are contained in a memorandum allegedly generated in an effort to create an independent basis to fire Reynolds—an issue of relevance only in connection with the CBA, which provides the termination requirements. Because the statement is intertwined with provisions under the CBA, Reynolds could not prove that Defendants, who were in management positions, made an unprivileged communication to a third party without reference to the CBA. In order to demonstrate special harm caused by the publication, which is another element of a defamation claim, Reynolds must show how the statement caused him to lose his job. *See id.* Proof of that issue would necessarily require the Court to examine the CBA. Therefore, Reynolds' defamation claim is subject to § 301 preemption.

### Conclusion

For the foregoing reasons, the Court will deny Reynolds' motions for remand and dismissal of Starr. The Court will grant Reynolds' motions for joinder of Ness and for leave to amend his complaint.

An Order consistent with this Opinion will be entered.

(quoting *Rowe v. Montgomery Ward*, 437

### ORDER

In accordance with the Opinion filed on this date,

**IT IS HEREBY ORDERED** that Plaintiff's motion for leave to amend the complaint (docket no. 24) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's motion to add Arlin E. Ness as a defendant (docket no. 24) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's motion to dismiss Starr Commonwealth Schools (docket no. 24) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's motion to remand to state court (docket no. 24) is **DENIED.**

Mich. 627, 628, 473 N.W.2d 268, 273 (1991)).