# STATE OF MICHIGAN

# COURT OF APPEALS

DAVID MORAN,

       Plaintiff-Appellant,

v

CITY OF KALAMAZOO,

       Defendant-Appellee.

UNPUBLISHED
January 19, 2016

No. 323925
Kalamazoo Circuit Court
LC No. 2013-000513-CD

Before: BOONSTRA, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

Plaintiff David Moran appeals as of right the trial court's order granting defendant City of Kalamazoo's motion for summary disposition pursuant to MCR 2.116(C)(10). We affirm.

Plaintiff is a Caucasian male who was employed by the Kalamazoo Department of Public Safety (KDPS) as a public safety officer (PSO) since 2006. In 2013, plaintiff applied for a promotion to the rank of sergeant. This case, brought under the Civil Rights Act (CRA), MCL 37.2101 *et seq.*, arises out of defendant's failure to promote plaintiff to sergeant.

In 2011, plaintiff was assigned to accompany Amil Alwan, another PSO with the KDPS, while they were on duty, because Alwan was emotionally "unstable" due to the recent killing of his friend Eric Zapata, who had been a PSO with the KDPS. While plaintiff was driving their patrol vehicle and Alwan was riding in the passenger seat, they passed David Deppe, who was standing by the side of the street. Deppe held his two middle fingers up at plaintiff and Alwan and yelled obscenities at them. Plaintiff and Alwan confronted Deppe and arrested him after discovering that he had outstanding warrants. They handcuffed Deppe and placed him in the backseat of their patrol vehicle. While plaintiff was driving them to the police station, a verbal altercation began between Deppe and Alwan. Alwan asked plaintiff to pull over and plaintiff complied. Alwan got out of the vehicle and applied physical pressure to Deppe, causing him pain. Plaintiff claimed that he told Alwan to "knock it off," but otherwise he did not attempt to prevent Alwan from harming Deppe despite acknowledging that Alwan had no legitimate reason to use force against Deppe. Karianne Thomas, the deputy chief of the KDPS, considered plaintiff to have exercised poor judgment in complying with Alwan's request to stop the vehicle and in not preventing Alwan from harming Deppe. Although plaintiff stated that he considered Alwan to be his supervisor because Alwan had seniority over him, Thomas testified at deposition that this was incorrect. All PSOs had the same rank regardless of seniority.

-1-

In 2012, plaintiff applied to become a member of the KDPS's bomb squad. Four positions were open on the squad. As part of the test to determine who would be accepted onto the squad, plaintiff was required to perform various exercises while wearing a 90-pound bomb suit. Plaintiff performed poorly in the bomb-suit test and was not chosen for the squad. Initially, three Caucasian men were selected for the bomb squad. Shortly thereafter, Sara Choi, an Asian female employee of the KDPS, was selected to fill the fourth position. Evidence shows that she performed well on the entrance exercises, including the bomb-suit test.

In 2013, plaintiff applied for the position of sergeant. The process of determining whom to promote from the rank of PSO to sergeant was composed of three phases. Phase one was a written examination. Phase two was a review of the candidates' personnel files. Phase three was an oral examination. Plaintiff achieved the highest overall score and was ranked first among nine candidates. However, his score on the oral examination was second lowest. Six positions for sergeant were available.

Jeff Hadley, the chief of the KDPS, was responsible for choosing which candidates to promote to sergeant. He consulted his executive staff before making the decision. Thomas, a member of Hadley's executive staff, told Hadley that plaintiff performed poorly on the oral examination and that his answers to two questions in particular raised concern. Specifically, when plaintiff was asked to describe an instance when he observed another KDPS employee behaving contrary to plaintiff's conscience such that plaintiff was required to act, plaintiff responded that he saw an officer take out his gun and look at it. When plaintiff was asked to describe a time when he talked to a coworker about the coworker's failure to adequately perform his or her job, plaintiff responded that he told a trainee to be aware of the "pecking order" among the PSOs. Thomas was concerned about these answers because there was no pecking order among PSOs and plaintiff's answers showed that his judgment had not progressed since the Alwan incident in 2011. Hadley testified at deposition that he did not promote plaintiff to sergeant because plaintiff was not professionally mature enough for the position. Instead, Hadley filled the six sergeant positions with three Caucasians, two African-Americans, and one American-Indian. Plaintiff sued defendant for race discrimination and the trial court granted defendant's motion for summary disposition.

This Court reviews de novo a trial court's decision regarding a motion for summary disposition. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). This Court reviews a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id.* "The reviewing court should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the substantively admissible evidence actually proffered in opposition to the motion." *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999).

The CRA states in relevant part that an employer shall not "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status." MCL 37.2202(1)(a). If a plaintiff

can produce direct evidence of racial bias, then the plaintiff can "prove unlawful discrimination in the same manner as a plaintiff would prove any other civil case." *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001). However, when a plaintiff presents circumstantial, rather than direct, evidence of discrimination, Michigan courts "allow a plaintiff to present a rebuttable prima facie case on the basis of proofs from which a factfinder could *infer* that the plaintiff was the victim of unlawful discrimination." *DeBrow v Century 21 Great Lakes, Inc (After Remand)*, 463 Mich 534, 538; 620 NW2d 836 (2001). This is known as the *McDonnell Douglas* approach because it "has its roots in *McDonnell Douglas Corp v Green*, 411 US 792, 802-805; 93 S Ct 1817; 36 L Ed 2d 668 (1973), and has been employed in countless subsequent decisions." *Id.* at 537. To present a prima facie case of discrimination, a plaintiff must present evidence that (1) he belonged to a protected class, (2) he "suffered an adverse employment action," (3) he was qualified for the position that defendant denied him, and (4) that his "failure to obtain the position occurred under circumstances giving rise to an inference of unlawful discrimination." *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 134; 666 NW2d 186 (2003). With regard to the fourth element, an inference of unlawful discrimination arises where individuals other than the plaintiff, "similarly situated and outside the protected class, were unaffected by the employer's adverse conduct." *Town v Mich Bell Tel Co*, 455 Mich 688, 695; 568 NW2d 64 (1997).

If a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for its employment decision. *Lytle v Malady (On Rehearing)*, 458 Mich 153, 173; 579 NW2d 906 (1998), quoting *Texas Dep't of Community Affairs v Burdine*, 450 US 248, 252-253; 101 S Ct 1089; 67 L Ed 2d 207 (1981). After the employer extinguishes the presumption of unlawful discrimination, to survive the defendant's motion for summary disposition, "the plaintiff must demonstrate that the evidence in the case, when construed in the plaintiff's favor, is 'sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff.'" *Hazle*, 464 Mich at 465, quoting *Lytle (On Rehearing)*, 458 Mich at 176. In other words, "the evidence must create a material issue of fact on which reasonable minds could conclude that the employer's stated reason is a pretext for discrimination for summary judgment to be precluded." *Town*, 455 Mich at 698.

> A plaintiff can establish that a defendant's articulated legitimate, nondiscriminatory reasons are pretexts (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision. [*Feick v Monroe Co*, 229 Mich App 335, 343; 582 NW2d 207 (1998).]

And, "the soundness of an employer's business judgment may not be questioned as a means of showing pretext." *Meagher v Wayne State Univ*, 222 Mich App 700, 711-712; 565 NW2d 401 (1997).

Here, plaintiff did not present direct evidence of discrimination, so plaintiff was allowed to use the *McDonnell Douglas* approach "to present a rebuttable prima facie case on the basis of

proofs from which a factfinder could *infer* that the plaintiff was the victim of unlawful discrimination." *DeBrow (After Remand)*, 463 Mich at 538.

There is no dispute that plaintiff met the first three elements of his prima facie case. As a Caucasian, he was a member of a protected class with regard to race. MCL 37.2202(1)(a); *Lind v Battle Creek*, 470 Mich 230, 232-233; 681 NW2d 334 (2004). He met the second element because he "did not receive the promotion for which" he applied. *Hazle*, 464 Mich at 467. He met the third element for several reasons. He had been a PSO for at least five years and was, therefore, eligible for the position of sergeant according to the collective bargaining agreement (CBA), which controlled promotions to sergeant. He had the highest score on the written examination and the highest overall score on the promotional examination. And, he received positive performance reviews in 2011 and 2012. See *Wilcoxon v Minnesota Mining & Mfg Co*, 235 Mich App 347, 369; 597 NW2d 250 (1999).

Although the trial court concluded that plaintiff established a prima facie case, defendant argues that plaintiff failed to meet the fourth requirement—that plaintiff's "failure to obtain the position occurred under circumstances giving rise to an inference of unlawful discrimination." *Sniecinski*, 469 Mich at 134. We agree.

Plaintiff argues that he met the fourth element because he was more qualified than the minority candidates who were hired for the position of sergeant. He argues that he had the highest total score on the examination, he had more experience working on the streets as a PSO, he had more seniority, and he had more education. However, evidence shows that a candidate's score on the examination was relevant only to determine which candidates were eligible for promotion. Under the CBA, only the candidates who scored in the top five on the examination were eligible. Hadley and Thomas testified that scores were irrelevant when actually choosing a candidate. Hadley and Thomas also testified that a candidate's experience working in the streets as a PSO with regard to calls responded to or arrests made was irrelevant because that experience depended on whether a PSO worked in a high-crime area, not the quality of the PSO. Although it is true that plaintiff had slightly more seniority than two of the minority candidates who were promoted, the amount of seniority was negligible and years of experience was merely a factor in determining a candidate's score which, as discussed, was only relevant for determining who was eligible for promotion. Although plaintiff had a B.A. and was working on obtaining an M.A. at the time of the promotions, plaintiff presented no evidence that such formal education was relevant to the position of sergeant. And, the resumes of two of the minority candidates who were hired show that one of them had a B.S. and that the candidates had at least as much training as plaintiff in subjects specific to police work. Therefore, plaintiff failed to show that he was more qualified for the position of sergeant than were the minority candidates who were hired for the position, thus failing to establish a question of fact as to whether his failure to obtain a promotion to sergeant "occurred under circumstances giving rise to an inference of unlawful discrimination." *Id.* See also *Plieth v St Raymond Church*, 210 Mich App 568, 574; 534 NW2d 164 (1995); *Campbell v Human Servs Dep't*, 286 Mich App 230, 240; 780 NW2d 586 (2009).

Plaintiff also argues that he satisfied the fourth element of his prima facie case because he presented evidence that the KDPS had a pattern of considering race when making promotional decisions. In support of this argument, plaintiff cites the deposition testimony of several

employees of the KDPS. Specifically, Brian Uridge, an assistant chief of the KDPS, testified that there were specific instances of where Hadley considered a candidate's race when promoting a person to the position of sergeant. However, he could not recall any of these instances. Roberto Zuniga, a captain at the KDPS, testified that he thought race was a factor in promotional decisions because he assumed that the KDPS had a higher number of African-American officers than it did in the 1960s. Andres Wells, a sergeant of the KDPS, testified that he was a field training officer (FTO) for the KDPS involved in selecting new FTOs. At one time, the names of two minority candidates for FTO were added to the list of candidates and Wells did not know why.

Uridge's testimony did not provide any other specific instance of discrimination regarding race. Zuniga merely testified that race was "some kind of factor" and his opinion was based on his assumption that the number of African-American officers had increased since the 1960s. Wells's testimony is void of any evidence as to why the two minorities were added to the list of FTO candidates. Furthermore, there is ample testimony in the record indicating that Hadley did not consider race when determining whom to promote to sergeant. We conclude that none of the testimony plaintiff cites establishes a question of fact as to whether plaintiff's failure to obtain a promotion to sergeant "occurred under circumstances giving rise to an inference of unlawful discrimination." *Id.* Rather, plaintiff's assertion that the above testimony shows that Hadley considered race when deciding whom to promote for sergeant in 2013 is merely speculation and conjecture, which cannot defeat summary disposition. *Libralter Plastics, Inc v Chubb Group of Ins Cos*, 199 Mich App 482, 486; 502 NW2d 742 (1993). Indeed, there is nothing about the testimony "from which a jury, if unaware of defendants' reasons, could infer unlawful discrimination." *Hazle*, 464 Mich at 471.

Plaintiff also attempts to support his argument that KDPS had a practice of considering race when making promotional decisions by showing, through statistics, the existence of such a practice. Specifically, plaintiff presented evidence concerning 25 promotions at the KDPS from 2008 through 2013. After examining this evidence, we fail to recognize a pattern indicating a racial bias against Caucasians or any race. In fact, the KDPS refused to promote a candidate of a minority race—even when minority candidates were eligible for promotion—in seven of the promotions for which plaintiff presented statistics. Plaintiff argues that statistics show that when the first-ranked candidate was not promoted, African-Americans were promoted approximately 35% of the time, and that out of the 63 promotions at the KDPS from June 30, 2008 through July 28, 2013, 17 of these promotions went to minority candidates. We do not find fault with plaintiff's calculations. However, plaintiff cites no law supporting the proposition that such statistics indicate racial discrimination. Any inference of discrimination concerning these statistics is mere speculation that cannot defeat summary disposition, *Libralter Plastics, Inc*, 199 Mich App at 486, especially given the weakness of such evidence when used by itself to support a prima facie case of discrimination, *Featherly v Teledyne Indus, Inc*, 194 Mich App 352, 360-361; 486 NW2d 361 (1992).

Next, plaintiff argues that his failure to gain a place on the bomb squad in 2012 indicates a pattern of discrimination showing that his failure to be promoted to sergeant in 2013 gives rise to an inference of unlawful discrimination. This argument fails. Evidence clearly shows that plaintiff was not chosen for the squad because he performed poorly on the bomb-suit portion of

the test. Specifically, plaintiff was physically shaking throughout the bomb-suit exercises, his heart rate and pulse increased dramatically, and he improperly brought everything to eye-level rather than looking at them through his visor. In contrast, Choi performed well in the bomb-suit test and in the other portions of the examination. Plaintiff argues that handwritten notes of an examination evaluator showing that he achieved a "high pass" whereas Choi achieved merely a "pass" show that plaintiff was more qualified to be on the bomb squad than was Choi. However, there is no evidence indicating to which portion of the bomb-squad examination these notes refer. Furthermore, other handwritten notes clearly show that plaintiff performed poorly in the bomb-suit exercise. Plaintiff also presented emails from various KDPS employees in supervisory positions indicating that Choi's addition to the bomb squad would add diversity to the squad. However, to the extent that these emails show bias, the bias concerns gender rather than race. And, plaintiff presented no evidence showing that the remarks regarding diversity "were causally related to" defendant's failure to place plaintiff on the bomb squad. *Sniecinski*, 469 Mich at 136. Moreover, even if the bomb squad incident were an instance of discrimination, it is merely one instance and would not indicate a pattern or practice of discrimination. See *Campbell*, 286 Mich App at 240.

Plaintiff next argues that the fourth element of his prima facie case is satisfied because he presented evidence that Hadley was under pressure to promote minorities. Specifically, plaintiff presented evidence that Hadley's performance was evaluated according to his efforts to diversify the KDPS and that he received quarterly reports and an annual affirmative action plan (AAP) showing the demographics of the employees of the KDPS. Plaintiff cites no law supporting the proposition that such evidence can satisfy the elements of a prima facie case of discrimination and has thus abandoned his argument. *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999). Further, we see nothing in the record showing that Hadley was under pressure to make decisions concerning the 2013 sergeant promotions according to the race of the candidates. The AAP and quarterly reports on the demographics of the KDPS merely show that Hadley was encouraged to diversify the KDPS by ensuring that recruitment efforts reached minority communities and to make sure that hiring and promotional procedures were fair to all candidates. Although Hadley's 2012 performance review states that he made efforts to promote a diverse workforce, there is no indication as to what these efforts were. And, Hadley testified that he considered the term "diversity" to refer to "a multitude of different things" such as a candidate's thought and background. At bottom, any conclusion based on the AAP, the quarterly reports, or Hadley's performance assessments that Hadley was pressured to discriminate according to race is pure conjecture, which cannot defeat summary disposition. *Libralter Plastics, Inc*, 199 Mich App at 486.

In sum, plaintiff has failed to establish a question of fact as to whether his failure to be promoted to sergeant in 2013 "occurred under circumstances giving rise to an inference of unlawful discrimination." *Sniecinski*, 469 Mich at 134. Therefore, summary disposition for defendant was proper. *Latham*, 480 Mich at 111. Moreover, even if plaintiff had presented a prima facie case of discrimination, plaintiff failed to establish a question of fact regarding pretext.

Defendant articulated a "legitimate, nondiscriminatory reason" for not promoting plaintiff to sergeant in 2013. *Lytle (On Rehearing)*, 458 Mich at 173. Specifically, defendant argued that

it did not promote plaintiff because plaintiff performed poorly on the oral interview portion of the promotional examination. Evidence supports defendant's argument. To survive defendant's motion for summary disposition, it was plaintiff's burden to "demonstrate that the evidence in the case, when construed in the plaintiff's favor, is 'sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff.'" *Hazle*, 464 Mich at 465, quoting *Lytle (On Rehearing)*, 458 Mich at 176.

Plaintiff first argues that defendant's reason for not promoting him was mere pretext because defendant provided differing rationales for not promoting plaintiff. However, there is no evidence that defendant ever argued but one reason for not promoting plaintiff—that plaintiff's answers to the questions in the oral examination showed that his judgment had not improved since the Alwan incident. Plaintiff's failure to provide any evidence of defendant's providing conflicting reasons for not promoting him is "fatal" to his argument that such conflicting reasons evidenced pretext. *Id.* at 474.

Next, plaintiff argues that defendant's reason for not promoting him was pretext because plaintiff was not disciplined for the Alwan incident, his 2011 performance review did not mention the Alwan incident, and his 2012 performance review stated that plaintiff would "progressively move into a command position within the next several years[.]" Although evidence shows all of that to be true, that does not in any way suggest that defendant's proffered reason for not promoting plaintiff had no basis in fact, was not defendant's true motivation, or was not a sufficient motivation. *Feick*, 229 Mich App at 343. As discussed, defendant claimed that it did not promote plaintiff because of his answers to the oral examination. The examination occurred after the 2011 and 2012 performance reviews, so those reviews could not have accounted for the lack of improvement in judgment that plaintiff demonstrated during the 2013 oral examination. And, plaintiff has not shown how the fact that he was not disciplined for the Alwan incident is relevant. None of the above evidence creates "a material issue of fact on which reasonable minds could conclude that the employer's stated reason is a pretext for discrimination for summary judgment to be precluded." *Town*, 455 Mich at 698.

Additionally, plaintiff argues that discrepancies in testimony regarding whether Hadley knew about plaintiff's answers to the oral examination questions show that defendant's reasons for not promoting him were pretext. However, plaintiff has cited no evidence suggesting that Hadley decided to not promote plaintiff before he knew about plaintiff's answers to the questions on the oral examination that indicated his judgment had not progressed since the Alwan incident.

Finally, plaintiff argues that the fact that he obtained a passing score on the oral examination and the questions at issue shows that defendant's reason for not promoting him was pretext. This argument lacks merit. Although plaintiff passed the oral examination, his score was the second-lowest of the nine candidates. And, his scores on the two questions at issue, discussed above, show that plaintiff applied ethical standards only when convenient, that he sometimes compromised, that he hesitated, and that he did not fully address issues. Far from indicating that defendant's purported reason for not promoting plaintiff was a pretext, the scores assessed to his oral examination questions give further credence to defendant's purported reason for not promoting plaintiff—i.e., that plaintiff's judgment had not improved since the Alwan

incident. We thus conclude that plaintiff failed to "create a material issue of fact on which reasonable minds could conclude that the employer's stated reason is a pretext for discrimination for summary judgment to be precluded." *Town*, 455 Mich at 698. The trial court properly granted summary disposition to defendant. *Latham*, 480 Mich at 111.

Plaintiff also argues that when making a determination on defendant's motion for summary disposition, the trial court improperly relied on a mobile video recording (MVR) of the Alwan incident because the probative value of the MVR was substantially outweighed by the danger of unfair prejudice under MRE 403. Plaintiff moved the trial court in limine to exclude the MVR from being entered into evidence at trial. However, after defendant moved for summary disposition and attached the MVR as an exhibit to its brief in support of its motion for summary disposition, plaintiff never objected to the trial court's considering the MVR in deciding defendant's motion for summary disposition. Therefore, this issue is unpreserved. MRE 103(c)(1); *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 341 (2008). This Court reviews unpreserved issues for plain error. *Richard v Schneiderman & Sherman, PC (On Remand)*, 297 Mich App 271, 273; 824 NW2d 573 (2012). "Plain error occurs at the trial court level if (1) an error occurred (2) that was clear or obvious and (3) prejudiced the party, meaning it affected the outcome of the lower court proceedings." *Id.* (quotation omitted).

"All relevant evidence is admissible, except as otherwise provided by . . . these rules . . . ." MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. MRE 403 "does not prohibit prejudicial evidence; only evidence that is unfairly so. Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue weight by the jury." *Lewis v LeGrow*, 258 Mich App 175, 199; 670 NW2d 675 (2003), quoting *Waknin v Chamberlain*, 467 Mich 329, 334 n 3; 653 NW2d 176 (2002).

The MVR is an audio and video recording of the Alwan incident from the perspective of the windshield of plaintiff and Alwan's police vehicle. We conclude that it was relevant because it corroborates defendant's proffered reason for not promoting plaintiff to sergeant in so far as it shows that the Alwan incident occurred. MRE 401. Although plaintiff argues that the MVR is unfairly prejudicial, we find that there is absolutely nothing about it that could cause a factfinder to give it undue weight. *Lewis*, 258 Mich App at 199. Plaintiff is never visible in the recording and we can discern no indication that plaintiff's voice is recorded in the audio. The MVR depicts nothing with regard to plaintiff that was not provided to the trial court through deposition or other forms of evidence. There is no indication that defendant submitted the MVR solely "for the sake of its prejudicial effect[.]" *Waknin*, 467 Mich at 334. Indeed, there is simply no basis on which to conclude that the probative value of the MVR—i.e., its relevance to corroborate defendant's reason for not promoting plaintiff—was substantially outweighed by unfair prejudice under MRE 403. *Id.* Furthermore, plaintiff's assertion that the trial court relied on the MVR, and was confused by it, in ruling on defendant's motion for summary disposition is pure speculation. Rather, transcripts of the motion hearing indicate that the trial court gave the MVR

cursory, if any, consideration. Therefore, plaintiff failed to establish plain error affecting the outcome of the lower court proceedings with regard to the MVR. *Richard (On Remand)*, 297 Mich App at 273.

Affirmed.


/s/ Mark T. Boonstra
/s/ David H. Sawyer
/s/ Jane E. Markey