*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DARREN BIELBY,

      Plaintiff-Appellant,

v

HURLEY MEDICAL CENTER,

      Defendant-Appellee.

UNPUBLISHED
February 29, 2024

No. 365300
Genesee Circuit Court
LC No. 21-116445-CD

Before: M. J. KELLY, P.J., and JANSEN and GARRETT, JJ.

PER CURIAM.

Plaintiff, Darren Bielby, appeals as of right the trial court's order granting summary disposition in favor of defendant, Hurley Medical Center (HMC), in this employee discrimination action. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Plaintiff was first hired by defendant as a database administrator/developer (DBA) in 2009, and was ultimately promoted to senior DBA. In the summer of 2016, he had a brain tumor surgically removed, leaving him with a major neurocognitive disorder. However, he returned to work full-time with accommodations in January 2017, including working from home and additional time to study and take tests for Microsoft certifications. By that time, defendant had hired a second (but not senior) DBA, Patrick Wallace.

Defendant has a contract with a medical software company called Epic, which provides software for electronic medical records (EMR). Epic has a program called Honor Roll, wherein it offers financial incentives in the form of discounts on its software when medical providers maintain employees with certain IT certifications. One such certification is the Microsoft Certified Solutions Associate (MCSA). In 2018, both plaintiff and Wallace took the certification test two times, but only Wallace passed. Despite having his accommodations in place, plaintiff declined to take the test throughout 2019 as he found it frustrating to study and not pass, and HMC only needed one person with the certification to be eligible for Honor Roll.

-1-

In 2020, defendant experienced a budget deficit as a result of the COVID-19 pandemic. As a result, the decision was made to lay off employees, specifically in the IT department. Plaintiff was laid off in May 2020, when he was 45 years old. Wallace, age 38 or 39, was retained, and ultimately promoted to senior DBA in 2021. Plaintiff filed suit, alleging age and disability discrimination in violation of the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2201 *et seq.* and the Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.*, respectively. Defendant moved for summary disposition under MCR 2.116(C)(10), asserting that plaintiff could not establish his discrimination claims under the burden-shifting analysis of *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973). Specifically, defendant asserted that plaintiff could not prove that defendant's legitimate, nondiscriminatory reason for plaintiff's layoff—financial difficulty because of the pandemic—was mere pretext. The trial court agreed, granted defendant summary disposition, and dismissed plaintiff's claims. Plaintiff now appeals.

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020). "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Id*. (quotation marks and citation omitted).

> If the moving party properly supports his or her motion, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. Our review is limited to the evidence that had been presented to the circuit court at the time the motion was decided. [*In re Guardianship of Malloy*, 343 Mich App 548, 558-559; 997 NW2d 733 (2022) (quotation marks and citations omitted).]

## III. AGE AND DISABILITY DISCRIMINATION

The trial court properly granted defendant summary disposition of plaintiff's age and disability discrimination claims because there is no genuine issue of material fact under the burden-shifting analysis that plaintiff failed to establish that defendant's proffered financial reasons for his layoff were mere pretext.

The PWDCRA provides that the opportunity to obtain employment without discrimination based on disability is a civil right. MCL 37.1102(1). To prove a violation of the PWDCRA, plaintiff must show:

(1) that he is disabled as defined in the act, (2) that the disability is unrelated to his ability to perform his job duties, and (3) that he has been discriminated against in one of the ways delineated in the statute. [*Jewett v Mesick Consolidated Sch Dist*, 332 Mich App 462, 471; 957 NW2d 377 (2020) (quotation marks, citations, and brackets omitted).]

The PWDCRA "generally protects only against discrimination based on physical or mental disabilities that substantially limit a major life activity of the disabled individual, but that, with or without accommodation, do not prevent the disabled individual from performing the duties of a particular job." *Id*. (quotation marks and citation omitted).

The ELCRA bars discrimination on the basis of age. Specifically, MCL 37.2022(1)(a) provides that an employer shall not discharge or otherwise discriminate against an individual because of age. To establish a prima facie case of age discrimination, the plaintiff must present evidence that (1) he belonged to a protected class, (2) he was subjected to an adverse employment action, (3) he was qualified for the position, and (4) he was discharged under circumstances that gave rise to an inference of unlawful discrimination. *Lytle v Malady*, 458 Mich 153, 172-173; 579 NW2d 906 (1998). For a claim based on termination based on age, the plaintiff may rely on evidence that he was replaced by someone outside his protected class, or that he was treated differently than similarly-situated employees outside the protected class for the same or similar conduct. *Meagher v Wayne State Univ*, 222 Mich App 700, 709; 565 NW2d 401 (1997).

The parties do not dispute that plaintiff has a disability—his neurocognitive disorder. The parties also do not dispute that plaintiff, at age 45, was laid off while Wallace, a younger employee, was retained, and ultimately filled the senior DBA position. Nor do the parties dispute that plaintiff's layoff or termination was an adverse employment decision. In making its decision from the bench, the trial court assumed for analysis purposes that plaintiff remained qualified for the position. Although the job description for senior DBA was ultimately updated to remove the certification plaintiff held, at the time that he sought accommodations, his physician verified that he was able to perform his job duties. Additionally, he held the senior DBA position from the time he returned to work after brain surgery in December 2016, up to the date of his discharge in May 2020. There is no indication that his disability was related to his ability to perform his job. Thus, plaintiff established a prima facie case of age and disability discrimination.

If a plaintiff does not have direct evidence of discrimination, the plaintiff may proceed under the burden-shifting framework in *McDonnell Douglas*, 411 US 792. *White v Dep't of Transp*, 334 Mich App 98, 107; 964 NW2d 88 (2020). Plaintiff admitted that Wallace was "quicker" than him, and had a "wall" of Epic certifications. He admitted that he could not learn as fast as Wallace, and he "felt" like he was looked at as a liability. He never actually heard anyone refer to him as "a liability." No one ever said his layoff was because of his disability, or refer to him as any kind of slur. Thus, there was no direct evidence of discrimination, and the trial court properly applied the burden-shifting framework.

"If a plaintiff establishes a prima facie case of employment discrimination, the burden shifts to the defendant to articulate a legitimate business reason for the decision." *Jewett*, 332 Mich App at 474. Defendant maintained that the reasoning for plaintiff's layoff was the financial condition of the hospital at the height of the COVID-19 pandemic. Dr. Michael Roebuck,

emergency room physician and Chief Medical Information Officer, testified that the IT department had a tight budget going into year 2020, which was made worse by the pandemic because the decrease in patients meant a decrease in revenue. He testified that around March 2020 to May 2020, the month plaintiff was laid off, the hospital was losing $3 million each month. Because finances were so tight, it was beneficial to the IT department to retain the financial incentive offered by Epic by retaining Wallace, the employee with the MCSA certification required to qualify for the Epic Honor Roll. These facts provide legitimate business reasons for defendant's employment action against plaintiff.

"If a defendant provides a legitimate business reason, then the burden returns to the plaintiff to prove that the reason was a pretext." *Id*. Pretext can be established

> (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision. The plaintiff may use direct or indirect evidence, but the plaintiff must establish a causal connection between the discriminatory animus and the adverse employment action. [*Id*. at 475 (quotation marks and citations omitted).]

"[I]n order to survive a motion for summary disposition, the plaintiff must demonstrate that the evidence in the case, when construed in the plaintiff's favor, is sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff." *White*, 334 Mich App at 109 (quotation marks and citations omitted). There is no genuine issue of material fact that the reasons offered by defendant for plaintiff's employment action were not pretextual.

Renee Link, plaintiff's supervisor, testified as to several reasons why plaintiff was let go while Wallace was retained. She said that during the pandemic, key resources were needed to support critical operations, so there was a halt on anything noncritical regarding patient care because of the budget crisis. The stability of the EMR system was key not only during the pandemic, but for patient care overall, and the safest and most sustainable decision was to maintain staff certified to keep the Epic Honor Roll grant. She said IT is a cost with almost no opportunity to reduce costs. Link testified that defendant had gotten over $530,000 in a three-year period because Wallace had the requisite certifications. She stated that defendant received over $150,000 in 2018, $236,000 in 2020, and over $245,000 in 2021. Link testified that Wallace had the necessary skill set and ability to sustain hospital operations while limiting negative impact to keep these critical software systems. She also said that had defendant retained plaintiff over Wallace, defendant would have lost the grants immediately.

Dr. Roebuck testified that the hospital was losing $3 million each month when the pandemic began, and the entire hospital went through massive layoffs to stay open and provide care. He did not know the specific numbers but was sure revenue decreased from 2019 to 2020. He said plaintiff was laid off for the same reason as everyone else—to save money. The decision on who to lay off was based on skill set, broadness of tools, ability to do different work, and meet certain requirements like Honor Roll; however, he did not make the decision to lay off plaintiff. He testified that factors considered in retaining Wallace over plaintiff included reducing the workforce quickly, considering the needs of the department and hospital, the difficulty of

predicting what the pandemic would bring, considering what work employees could do outside their job duties, and the Honor Roll. Dr. Roebuck was not familiar with plaintiff's accommodations, but he never had any discussions regarding disabilities when deciding who to lay off. Evon Barno, Senior Director of Virtual Services and Revenue Enhancements, took part in the layoff meeting among management, and although he was not involved in the decision to lay off plaintiff, he said there was no concern expressed regarding plaintiff's disability at these meetings.

Plaintiff asserts that the Court cannot rely on the affidavit of Keith D. Poniers, HMC Vice President and Chief Financial Officer, because he was not listed in defendant's initial disclosures or on its witness list. However, defendant's initial disclosures included HMC and "any of its employees, agents, or representatives, including but not limited to . . . ." Poniers is not specifically listed on defendant's witness list; however, defendant lists any record custodians of HMC, as well as any rebuttal witnesses. As such, the Court may consider his affidavit, which was produced in the trial court. He attested that before the pandemic, defendant was operating on a tight budget, and when the pandemic hit, there was a major decrease in patient volume, and therefore operating revenue. The monthly operating losses were as follows: $4.2 million in March 2020, $3.9 million in April 2020, and $5.4 million in May 2020. Therefore, staff reductions were implemented, including 17 layoffs in May 2020. Poniers attested that defendant received $8.3 million in federal stimulus money in April 2020, and $18.5 million in May. However, that only provided short-term relief and operating revenue still needed to be reduced. The financial reports actually showed a reduction in net patient revenue from 2019 to 2020 ($420,931,738 to $397,337,936) and a $4.5 million reduction in other operating revenue ($43,949,134 to $39,375,822). Thus, despite the stimulus, defendant was required to reduce expenses to meet the reduction in revenue caused by the pandemic.

Plaintiff also fails to establish a genuine issue of material fact regarding pretext as the evidence establishes that his layoff and Wallace's retention complied with the IT department layoff policy, which provides:

2. Layoffs: In the event workforce reduction is mandated, IT management shall have sole discretion as to which positions are laid off. Management will be guided in this process by the following non-exclusive criteria:

a. reducing personnel that results in the least negative impact to Medical Center operations;

b. targeting reductions to ensure on-going safety and efficiency of Medical Center operations;

c. utilizing employee evaluation scores so as to retain the highest performing employees.

3. Seniority: while Management may consider employee seniority when evaluating team assignments, reassignments, layoffs, or recalls, seniority shall not be the exclusive criteria for decision-making. Rather, Management shall consider all factors that result in the best support of Medical Center operations.

-5-

4. Equal Employment Opportunity: all management decisions regarding assignments, reassignments, layoffs, or recalls shall comply with SP 2828, Equal Employment Opportunity/Non-Discrimination Policy (Title VII Policy).[1]

Reducing plaintiff over Wallace produced the least negative impact to HMC and ensured ongoing efficient operation because Wallace's MCSA certification ensured the IT department made the Epic Honor Roll and secured financial incentives at a time when defendant was in a financial crisis. Regarding evaluation scores, although plaintiff and Wallace both consistently scored within the "Solid Performer" range, Wallace's actual scores were higher than plaintiff's. In 2016, plaintiff's overall score was 2.00; Wallace's was 2.58. In 2017, plaintiff's score was 2.45; Wallace's was 2.66. In 2018, plaintiff's score was 2.51; Wallace's was 2.54. In 2019, plaintiff's score was 2.28; Wallace's was 2.63. In 2020, Wallace's score was 2.53, and in 2021, 2.75.

Plaintiff does not establish a question of fact regarding pretext in his argument regarding the terminology used by defendant. Although plaintiff argues that defendant's usage of the term "layoff" rather than "termination" demonstrates a discriminatory motive, plaintiff actually testified that during the process he did not feel misled as to whether his layoff was temporary or permanent. He assumed a layoff was temporary with the chance for recall. He was not told it was permanent. But his understanding does not create a question of fact. Link testified that she read plaintiff the layoff policy, and told him it was a layoff because of COVID-19. Link's comments in retrospect regarding plaintiff's practice of taking notes in reference to the e-mails regarding recall rights also does not establish any question of fact regarding pretext. Link testified that defendant's disability was absolutely not a factor in her decision.

Lastly, plaintiff does not establish a question of fact regarding pretext because the job description for senior DBA was ultimately updated to remove his certification, but included the MCSA. Although the MCSA was set to retire, as explained above, it was one of the certifications required for eligibility for the Honor Roll, which the IT department sought to maintain to qualify for the financial incentives. Moreover, the updated job description was not posted for the senior DBA position until the last quarter of 2021. In the ever-changing field of computer technology, the updated job description over a year after plaintiff's layoff does not establish pretext or any discriminatory motive to preclude plaintiff from reapplying for the position.

In sum, viewing the evidence in a light most favorable to plaintiff, he has failed to present evidence that defendant's legitimate, nondiscriminatory reason for termination was pretextual, let alone pretext for unlawful discrimination based on age or disability. The evidence does not raise a genuine issue of material fact regarding whether discrimination was a motivating factor in defendant's decision. Accordingly, the trial court did not err by granting defendant summary disposition of both of plaintiff's discrimination claims.

---

[1] The general HMC policy for the layoff and recall of nonbargaining unit employees provided that department-specific layoff policies prevailed over this general policy.

Affirmed.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Kristina Robinson Garrett